160 So.2d 839 (1964)
Mrs. Marilyn FRUGHT, wife of and Raymond J. WILDE
v.
SCHWEGMANN BROS. GIANT SUPERMARKETS, INC. and Roy J. Centanni.
No. 1240.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
Rehearing Denied March 2, 1964.
A. Russell Roberts, Metairie, for plaintiffs-appellees.
Tucker & Schonekas, Russell Schonekas, New Orleans, for defendants-appellants.
Before REGAN, YARRUT and HALL, JJ.
*840 HALL, Judge.
Mrs. Marilyn Frught, wife of and Raymond J. Wilde brought suit against Schwegmann Bros. Giant Supermarkets Inc. and its employee, Roy J. Centanni, seeking $15,000.00 damages for Mrs. Wilde's alleged unlawful detention by defendants and their accusation that she was a shoplifter. Following trial on the merits, the District Court rendered judgment in favor of Mrs. Wilde and against the two defendants in solido in the sum of $2,500.00, and dismissed Mr. Wilde's claims. Defendants appealed and plaintiff, Mrs. Wilde, answered the appeal praying that the award of damages in her favor be increased from $2,500.00 to $7,500.00. Plaintiffs concede the correctness of that part of the judgment which dismissed the claims of the husband.
The points at issue are: (a) Whether defendants had reasonable grounds for believing that Mrs. Wilde committed a theft and whether her detention by them was reasonable so as to render them immune from liability herein under the provisions of LSA-R.S. 15:84.5, subd. A and LSA-R.S. 15:84.6; (b) the constitutionality vel non of these sections of the Revised Statutes; and (c) whether the damages awarded are inadequate or excessive.
The sections of the Revised Statutes relied upon by defendants read as follows:
"§ 84.5 Detention for questioning or arrest of persons suspected of shoplifting
"A. A peace officer, or a merchant, or a merchants' specifically authorized employee, may use reasonable force to detain for questioning for a length of time, not to exceed sixty minutes, on the merchant's premises any person whom he has reasonable ground to believe has committed theft of goods displayed for sale by the merchant, regardless of the actual value of such goods, and such detention shall not constitute an arrest. Willful concealment of goods either inside or outside the store of the merchant is prima facia evidence of intent to steal and permanently deprive the owner of his goods." LSA-R.S. 15:84.5, subd. A (Act 301 of 1958)
"§ 84.6 Immunity from liability
"No peace officer, merchant, or merchant's specifically authorized employee shall be criminally or civilly liable for false arrest or false imprisonment of any person detained as provided in R.S. 15:84.5A or arrested under R.S. 15:84.5B where the said police officer, merchant or merchant's specifically authorized employee had reasonable ground at the time of the detention or arrest for believing that the person detained or arrested committed theft of goods displayed for sale, regardless of the actual value of such goods." LSA-R.S. 15:84.6 (Act 301 of 1958, Act 326 of 1960)
The record shows that on September 29, 1960, Mrs. Wilde, who was a regular customer, purchased several items in defendant's store for approximately $22.00 or $23.00. She passed through the cashier's line, checked out her purchases with the cashier and paid for the items. Among the items purchased were two cans of floor wax, a large box of soap powder, sanitary napkins and various other articles.
After she had been through the cashier's line and paid her bill she noticed there was a sale of step-ladders. She picked up a five foot ladder, placed it across her grocery cart, returned to the cashier and paid for it, and then proceeded with her grocery cart containing her purchases to her station wagon in the parking lot. Mrs. Wilde testified that she placed the ladder in the trunk, unloaded her other purchases into the back of the car, got in the driver's seat, and was about to start the motor when Centanni, a store detective for Schwegmann grabbed her by the arm, took the car keys out of the ignition switch, accused her of shoplifting, and demanded that she return to the *841 store with him. Plaintiff told Centanni it was a misunderstanding and that she wanted to telephone her husband. Centanni escorted her back into the store.
Centanni testified that while plaintiff was shopping he had seen her take a buffer pad, (used for waxing floors) priced at $2.09 and place it in her purse; that he watched her closely from that time on; that she did not pay for the buffer pad and that he followed her to her automobile. He denies that he grabbed her by the arm or that he took her car keys. Instead, he claims that she voluntarily returned to the store to straighten the matter out. The District Judge found that although plaintiff voluntarily returned to the store to straighten out the matter she actually had no choice.
After returning to the store plaintiff and Centanni went directly to the cashier who had checked out plaintiff's purchases. Upon questioning by Centanni the cashier stated that Mrs. Wilde had not paid for the buffer pad.
Mrs. Wilde was then taken to a storage room, the dimensions of which were approximately 5 x 9 feet. The room had no windows, nor was there any place for Mrs. Wilde to sit down.
Mrs. Wilde was accompanied to the room by Centanni and Mr. Aubrey Mac-Donald, another store detective. There a printed form entitled a "Confession Blank", prepared by Schwegmann's attorneys and printed in pads of 50 or 100, was presented to plaintiff for her signature. She refused to sign the confession and requested that she be permitted to telephone her husband or the police. When this request was refused she asked the store detective to call her husband or the police themselves. This request was also refused. She was given the alternative of signing the confession or remaining in the room. After being thus held against her will for over thirty minutes Mrs. Wilde signed the "confession" after writing on the bottom thereof "This artical (sic) was taken by me with me thinking I had paid for it."
Plaintiff and her husband operate a day nursery in connection with which it is their duty to pick up certain children when school lets out. Mrs. Wilde testified that she ultimately signed the "confession" after her repeated requests to call her husband or the police were refused, in order to get away from defendant's employees and the store, because she was considerably upset and worried about the children, as neither her husband, the children, nor the children's parents had any way of knowing she would be unable to pick them up unless she could get out of defendant's control.
After this episode, plaintiff drove to her home, whereupon she grew extremely nervous and became hysterical. Mr. Wilde testified that she became so upset that he was forced to administer nerve medicine and put her to bed. He then summoned the police and his call was answered by Detective Frank Hardin and an associate.
Hardin testified that when he arrived at the Wilde residence Mrs. Wilde was in bed upset, but he persuaded her to dress and accompany the detectives to the store. There they questioned the parties involved and requested that the "confession" be returned to Mrs. Wilde, but defendant's employees refused.
In his comprehensive and well-considered "Reasons for Judgment" the District Judge said in part:
"Defendants' witnesses were most evasive. They attempted to give the impression that plaintiff willingly stayed in the room with them. The evidence disclosed that two or more Schwegmann employees were with plaintiff all the time, constantly urging her to sign the `confession'. She was detained in excess of thirty minutes.
"There is little doubt plaintiff voluntarily returned to the store with Centanni to straighten the matter out, although she had no choice in the matter. She told Centanni there was a misunderstanding and wanted to call *842 her husband, but was not permitted to do so. Thereafter, she was held against her will.
"The Court is unable to ascribe any reason whatsoever for the failure of defendant's employees, if they suspected plaintiff of shoplifting, to check her purchases against the sales slip, which was then available. It is apparent from the evidence that the sole purpose of detaining plaintiff was not to ascertain whether or not she was guilty of shoplifting, but to secure a signed confession whether she was guilty or not.
"There is no credible evidence that plaintiff concealed the buffer pad or did not pay for it. Centanni, who testified he was watching plaintiff very closely, did not see her pick up a stepladder, pay for it, and leave the building with it. Nor did he check her sales slip, which was the logical thing to do had he reasonable grounds for his suspicions. Other employees of defendant, who intimidated plaintiff into signing the document, had no knowledge whatsoever of whether or not she was guilty of shoplifting. These other employees, MacDonald and Schrieber, made no pretense of knowing the facts. They took Centanni's word that plaintiff was a shoplifter, and, in the words of the assistant manager, Schrieber, she was taken to the room `where they keep the shoplifters'.
"MacDonald and Schrieber simply accepted the fact plaintiff was a thief on the word of Centanni who, although he testified he watched plaintiff closely and knew she hadn't paid for the buffer pad, did not see plaintiff buy a stepladder and make a second trip to the cashier to pay for it and leave the store with it. Plaintiff could as readily have been accused of stealing the stepladder or any other item she purchased. Nor was Centanni certain of his suspicion. Had he been certain, there would have been no reason to return to the cashier. Being uncertain, he did not proceed properly when he relied only on the cashier's memory to illegally detain plaintiff. The evidence clearly establishes that plaintiff was not held by defendant for the purpose of ascertaining the true facts, but simply to obtain a confession. She was faced with leaving children unattended for an unknown period of time or signing the `confession'. The mere fact that defendants permitted her to write the qualifying statement on the bottom thereof evidences their own uncertainty.
"The testimony of plaintiff is that she knew the cashier, as she was a regular customer at the Airline store, and called out to the cashier the amount of the purchase, as the buffer pad was on the bottom of the shopping cart. It was against the rules of the store for the cashier to accept prices in this manner. Centanni made no pretense of hearing any conversation between plaintiff and the cashier, or seeing the amounts rung up on the register. He could not possibly have known whether or not plaintiff paid for the buffer pad. In accepting the cashier's statement from memory, he gave more force and effect to the presumption that the cashier followed the store rules than he did to plaintiff's constitutional presumption of innocence.
"Such action by defendant's employee is not reasonable, as provided in LSA-R.S. 15:84.5, 15:84.6. It is almost beyond belief, when the means were at hand to make certain determination of whether or not the article was paid for.
"* * * The Court finds from the facts that there were no reasonable grounds upon which to suspect plaintiff of shoplifting and that the only method by which shoplifting, if reasonably suspected, could have immediately *843 been proved or disproved, i. e., checking the grocery slip, was not employed. Further, if the Act means anything, it simply permits a storekeeper time to investigate suspected shoplifting. It does not confer the power of intimidation by holding a person incommunicado until a confession is signed, without reasonable effort to ascertain the true facts. The defendant is not within the protection of the statute.
"There is no doubt that bringing plaintiff to the cashier's desk and inquiring if she paid for an article, in the presence of customers, was humiliating and embarrassing. The evidence also shows that the employees of defendant corporation knew that the room where plaintiff was taken was used for detention of persons suspected of shop-liftingit was the `room where they take the shoplifters'. Thus, a number of people knew that plaintiff, obviously a lady, was being accused of shoplifting. Other employees came in and out of the room while she was there. In addition to the above factors, the embarrassment and humiliation, plaintiff had great mental anxiety on account of the children being let out of school with no one there to pick them up, and being unable to communicate with her husband, or even the police. The extent of her worry, anxiety and concern for the children is illustrated by her signing the document presented, despite her unquestionable innocence. * * *."
We concur in the District Judge's appreciation of the facts and his conclusions. Since in our opinion defendants are not entitled to the protection of the quoted statutes there is no necessity to pass upon their constitutionality.
We now come to the question of quantum. Plaintiff urges that the damages awarded should be increased to at least the sum of $5,000.00, and cites a number of cases from other jurisdictions wherein awards ranging from $5,000.00 to $15,000.00 have been sustained.
On the other hand defendants contend that an award of $2,500.00 to Mrs. Wilde who does not contend that she suffered any physical damage other than temporary nervousness and hysteria is grossly out of line with the jurisprudence of this state. Defendants contend that an award of $100.00 for her humiliation and embarrassment would be more than adequate, and cite the following cases: Pearson v. Great Southern Lumber Co., 134 La. 117, 63 So. 759, L.R.A. 1916F, 1247, (1913) award of $100.00. Burton v. Llano Del Rio Co. of Nevada, 177 La. 366, 148 So. 259, (1933) award of $250.00. Gladney v. De Bretton, 218 La. 296, 49 So.2d 18 (1950) award of $750.00. Sweeten v. Friedman, 9 La.App. 44, 118 So. 787 (1928) award of $250.00. Rodi v. Sizeler, 145 So. 38 (La.App.1932) award of $125.00. Healey v. Playland Amusements, Inc., 199 So. 682 (La.App.1941) award of $750.00. Abraham v. Boat Center Inc., 146 So.2d 23, (La.App.1962) award of $750.00.
The older decisions on quantum are not realistic today. We note that the 1962 award in the Abraham case supra was influenced by some of the older decisions cited by defendants. Nevertheless we are of the opinion that the award of $2,500.00 in this case is excessive and should be reduced to $1,500.00 which we regard as neither inadequate nor excessive.
For the foregoing reasons the judgment appealed from is amended by reducing the damages to Mrs. Wilde from $2,500.00 to $1,500.00 and as so amended and in all other respects the judgment appealed from is affirmed; costs of this appeal to be borne in equal proportions by appellants and appellee.
Judgment amended and affirmed.