306 So.2d 842 (1975)
J. D. BRASHER et al., Plaintiff-Appellee,
v.
GIBSON'S PRODUCTS COMPANY, INC., Defendant-Appellant.
No. 12508.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1975.
*843 Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
Oliver & Wilson by John W. Wilson, Monroe, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
PRICE, Judge.
Plaintiffs, J. D. Brasher and his wife, filed this action in tort seeking damages for the detention and arrest of J. D. Brasher on suspicion of shoplifting. Although this suit was filed against Gibson's Products Company, it has been stipulated that defendant is actually Howard Brothers Discount Stores, Inc.
The trial court awarded J. B. Brasher $1,613.00 in damages and taxed the court costs against the defendant. Mrs. Brasher's action was dismissed. Defendants have appealed from the judgment against *844 them and plaintiffs have jointly filed an answer to the appeal. No argument has been presented to this court in Mrs. Brasher's behalf and we note without discussion that Mrs. Brasher could not bring her case before this court by answer to the appeal. See Alleman v. Sentry Insurance Company, 257 So.2d 799 (La.App. 3rd Cir. 1972), writ refused. Plaintiff has also filed a motion to dismiss in this court.

MOTION TO DISMISS
The judgment in this suit was signed on May 8, 1974; on May 9th, defendants sought and were granted a suspensive and devolutive appeal. Also on May 9th defendants paid to the clerk of court $25.00, his costs for preparing the record, together with another check for $25.00 made out to the clerk of the Second Circuit Court of Appeal for the cost of filing the record here. The return date was set for July 9th. The record reflects that on motion of James L. Ward, court reporter and Deputy Clerk of Court, the return day was extended from July 9th until August 29th. Plaintiff-appellee does not contest this extension. The record further reflects that on August 29, 1974, "on motion of James L. Ward, Court Reporter, on suggesting that the cost of preparing the note of evidence has not been paid by either counsel that the return date of this appeal be extended to September 13, 1974."
It is defendant-appellee's contention that this appeal should be dismissed because the August 29th extension was improperly granted by the trial court.
This issue was presented in the recent case of Duncan v. Gill, 222 So.2d 80; (La.App. 4th Cir. 1969). There the court said:
"Mover also argues there was no legal extension of the return day from February 3 to 21 `for sufficient cause' as required by LSA-C.C.P. art. 2125. Since an appeal cannot be dismissed except for defect attributable to appellant, LSA-C. C.P. art. 2161; nor (except after allowing time to remedy) because of any error on the part of the clerk of court or of the trial judge, LSA-R.S. 13:4433; we cannot dismiss this appeal on the theory that the judge improperly granted the extension on the deputy clerk's motion."
We find this case dispositive of the issue and accordingly deny the motion.

MERITS
The trial judge gave comprehensive written reasons for judgment in which he fairly and accurately portrayed the facts giving rise to this litigation and concisely set forth the legal issues presented. We find it appropriate to adopt the pertinent portions of this opinion for a recitation of these facts and issues as follows:
"Plaintiffs, Mr. and Mrs. J. D. Brasher, husband and wife, bring this action for damages for humiliation and embarrassment arising out of an incident which occurred in defendant's store on the night of November 4, 1972, in which Mr. Brasher was accused of shoplifting by two of defendant's employees.
* * * * * *
"Defendant invoked the privilege of immunity set forth in Louisiana Code of Criminal Procedure Article 215, which reads as follows:
`A peace officer, merchant, or a specifically authorized employee of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises, for a length of time not to exceed sixty minutes, when he has reasonable cause to believe that the person has committed theft of goods held for sale by the merchant, regardless of the actual value of the goods. The detention shall not constitute an arrest.
`A peace officer may, without a warrant, arrest a person when he has *845 reasonable grounds to believe the person has committed theft of goods held for sale by a merchant, regardless of the actual value of the goods. A complaint made to a peace officer by a merchant or a merchant's employee shall constitute reasonable cause for the officer making the arrest.'
"A further defense of compromise was raised arising out of an alleged confession and release executed by Mr. Brasher.
"The court finds the facts to be as follows:
"Shortly after 8 p. m. on the evening in question, Mr. and Mrs. J. D. Brasher arrived at defendant's store on Louisville Avenue in Monroe, Louisiana. While Mrs. Brasher went about her shopping, Mr. Brasher wandered about the store going from department to department idly looking for merchandise in which he might be interested. At some point, he saw some razor blades on a counter and picked up a package of them. He continued his perambulations carrying the package of blades in his hand.
"Desiring a cigarette, he folded the package and put it in his pocket while he rolled and lighted the cigarette. Afterwards, the blades stayed in his pocket.
"This was observed by two of defendant's security men. Their suspicions aroused, by what they perceived to be surreptitious action in putting the blades in his pocket, they commenced following him discreetly about the store. Mr. Brasher eventually went to an area by the checkout counter, where, according to him, he waited for his wife. Finally, he walked out the front door, passing the checkout counter, where he stood on the sidewalk observing the weather and traffic. Mr. Brasher said he went to throw away a cigarette.
"While standing there, he was accosted by one of the employees who had been following him and asked if he had forgotten to pay for something. Mr. Brasher produced the blades from his rear pocket and was asked by the employee to accompany him to the inside of the store, which he did voluntarily.
"According to Mr. Brasher, it was his intention to pay for the blades when Mrs. Brasher checked out the merchandise which she had purchased, but that he never got a chance to do so.
"The other employee who had waited just on the inside of the door joined them when they re-entered the store and together the three men went to the security room on an upper floor. They passed within a few feet of Mrs. Brasher who was then at the checkout counter and who did not notice their presence nor did Mr. Brasher make any attempt to claim her attention.
"There was no loud talking or other disturbance to attract the attention of either Mrs. Brasher or the other customers.
"Arriving at the security office Mr. Brasher was made to empty his pockets and was "patted down" by one of the employees to determine if he was carrying a weapon. None was found. One employee went to telephone the police.
"Mr. Brasher was photographed and was asked to sign a document which explained to him his right to remain silent, have an attorney, etc. and which also contained a form confession of guilt and a damage release. He did so, although he protested on the trial that he did not understand what he was signing.
"The principal difference in Brasher's testimony and that of the employees is in Brasher's claim of vigorous and uncomplimentary questioning by the employees and that he tried to get the men to locate his wife and verify his story with her. She could not check out her merchandise because she couldn't identify herself as possessing checking authority, unless he was present to provide the identification, *846 and this turned out to be true because Mrs. Brasher was unable to clear her purchases. The employees refused to allow him to contact anyone and made him await the arrival of the police. This took about 45 minutes.
"In the meantime, the store had closed and Mrs. Brasher, not knowing the whereabouts of her husband, had to wait in the car.
"When Mr. Brasher came out of the store with the policeman, the three went to the police station where Mr. Brasher was booked for shoplifting and released on bond.
"Later trial was held in Monroe City where a verdict of not guilty was returned. * * *."
The trial judge correctly found the instrument signed by plaintiff while he was being detained by defendant's security guards did not operate as a transaction or compromise. The court relied on the provisions of La.C.C. art. 3071, and the decision in Hancock v. Lincoln American Life Insurance Company, 278 So.2d 561 (La. App. 1st Cir. 1973), in finding the absence of any consideration to plaintiff for executing the waiver and release rendered it invalid as a compromise agreement.
We not only find no error in this conclusion but also consider the evidence to show the instrument was signed under duress.
The printed form begins with the words "You are under arrest." This portion of the form was admittedly read to plaintiff immediately upon his being taken to the security room. The form continues with an explanation of the so-called "Miranda rights" to the person being detained. The general text of the form gives rise to the inference the security personnel are exercising police authority. Their testimony indicates the sole purpose of procuring the execution of the form is to protect the store against civil liability from any improper detention. From this circumstance plaintiff had nothing to gain by signing such an agreement and it is therefore without any supporting consideration.
We further find the actions of the security guards, who are defendant's employees, were unreasonable in this instance and afford defendant no protection or immunity from civil liability under the provisions of La.Code of Criminal Procedure Article 215.
We concede from what they had observed the defendant's employees were justified in forming an initial opinion that plaintiff was about to leave the premises without paying for the razor blades. However, their arbitrary refusal to investigate his explanation was unreasonable. Had this been done it would have revealed that plaintiff intended to go through the checkout line with his wife to enable her to use his driver's license as identification to cash a check to pay for purchases. It would be improper to indulge in a presumption that he would not have paid for this .99¢ item at that time.
To refuse to verify information easily obtainable and within the confines of the store showed a complete disregard for the exercise of reasonable care in ascertaining all facts before making a serious accusation against a customer. Had this been done prior to calling the police it is unlikely plaintiff would have been the victim of a criminal charge by the police officer.
We also consider the actions of the security guard in searching plaintiff for weapons, photographing him, and inducing him to sign a confession and waiver of civil liability against the store unreasonable under the circumstances. Although the facts of the instant case are not as aggravated, they are somewhat analogous to Wilde v. Schwegmann Bros. Giant Supermarket, Inc., 160 So.2d 839 (La.App. 4th Cir. 1964).
Not only must the storekeeper have probable cause to initiate any inquiry from a customer in regard to shoplifting, but the method and extent of inquiry must also be reasonable to afford the store immunity from civil liability under Article 215. See *847 Durand v. United Dollar Store of Hammond, Inc., 242 So.2d 635 (La.App. 1st Cir. 1970).
Plaintiff has answered defendant's appeal asking for an increase in the sum awarded as damages. The evidence does not show anyone in the store at the time of the incident was aware of his being accused. This is particularly so as it happened at closing time. Plaintiff's principal cause for embarrassment and humiliation was his being searched, photographed, and induced to sign a confession, and tried on charges of shoplifting. The trial judge awarded $1,500.00, plus special damages of $113.00.
We find this amount to be in accord with the awards made in other cases of this nature and to be within the discretion accorded the trial judge determining the amount of damages a claimant is entitled to.
For the foregoing reasons the judgment appealed from is affirmed at appellant's costs.