*1182
 
 OPINION
 

 Per Curiam:
 

 Respondent Willie Washington (Washington) brought the instant action against appellant K-Mart Corporation (K-Mart) asserting claims for false arrest, false imprisonment, assault and battery, defamation, malicious prosecution, negligent hiring and retention
 
 [1]
 
 , conversion, and negligent and intentional infliction of emotional distress, arising from an incident which occurred at a K-Mart store on December 31, 1986. The case proceeded to jury trial on all claims except the claims for conversion and emotional
 
 *1183
 
 distress. The jury found in favor of K-Mart on the claims of false arrest and negligent hiring and retention. The jury found for Washington on the claims for assault and battery, malicious prosecution, defamation, and false imprisonment, awarding him $263,156.50 in damages. K-Mart filed a motion to amend judgment, which the district court denied. K-Mart appeals both the order denying the motion to amend and the final district court judgment, seeking a new trial based on the trial court’s admission of a K-Mart loss prevention manual into evidence. K-Mart also challenges the district court’s finding of defamation and the award of future damages for malicious prosecution, assault and battery, and defamation. We can ascertain no grounds upon which to grant K-Mart’s request for a new trial and we conclude: (1) the K-Mart manual was properly admitted into evidence; (2) there was sufficient evidence to support the jury’s finding of slander per se and the award of both past and future damages for such defamation; and (3) the medical testimony introduced at trial supports only $3,500.00 in future damages for assault and battery.
 

 FACTS
 

 On December 31, 1986, Washington visited his hairdresser to have his hair done in a “Jeri Curl” for New Year’s Eve. Washington’s hairdresser testified that Washington’s hair was dripping wet when he left the hair salon. She explained that the permanent wave she gave Washington required liberal application of a moisturizing hair conditioner to prevent the hairstyle from drying out. Later that day, Washington went to a K-Mart store in Las Vegas to purchase a hair product to maintain his new hairstyle. The facts and events from this point on are disputed. Washington testified that he searched the shelves but could not find the hair product he desired; therefore, he left the store without making a purchase. The K-Mart loss prevention agent, Scott Weiss (Weiss), testified that he saw Washington use two hair products from the shelves, spray a substantial quantity of “Sta-Sof-Fro” conditioner into his hair, and then leave the store. Weiss testified that he followed Washington into the parking lot to ask him to pay for the hair product. An off-duty police officer, Raymond Berni (Officer Berni), testified that he saw Weiss, with the bottle of curl activator in his hand,
 
 [2]
 
 following Washington. Officer Berni decided to intervene, and an altercation ensued.
 

 Weiss testified that he placed Washington under citizen’s arrest intending to return him to the store security office. However,
 
 *1184
 
 Weiss was not sure when or “where the actual citizen’s arrest took place and where the police department took over and their arrest was initiated.” Officer Berni testified that he placed Washington under arrest for obstruction and hindering a police officer’s investigation. The testimony as to who arrested Washington when and for what is far from certain. It is agreed that when Officer Berni attempted to handcuff Washington, he eluded him. Officer Berni and Weiss then chased Washington across the parking lot. Washington stumbled and fell, whereupon the two men tackled and handcuffed him.
 

 A witness, Joyce Gantz (Gantz), testified that she saw Washington in the K-Mart hair care aisles; she described his hair as wet and stated “it looked like he just had it fixed at the shop.” She observed Washington scanning the shelves of hair-care products. She stated he appeared to be searching for a specific product. Gantz did not see Washington use any products; she testified “he just turned around and walked out.” After Gantz paid for her purchases, she saw that two men she assumed were security guards had stopped Washington outside the store. She heard the two men ask Washington to go back into the store. Gantz stated that Washington attempted to walk away from the two men; however, they grabbed Washington, handcuffed him, threw him on the ground, and called him a “nigger.” Gantz testified that the two men kicked Washington in the shoulders, neck, and back.
 

 Washington testified that he indicated he would cooperate, but the two crime fighters kicked him around nonetheless, and used racial epithets. Weiss and Officer Berni deny using racist language, and contend instead that Washington swore at them. A crowd gathered in the parking lot. After Washington was sufficiently subdued, he was led through the K-Mart store in handcuffs and taken to the store security office.
 

 Officer Berni and Weiss testified that Washington was then placed, handcuffed, in a chair in the security office. The men testified that Washington began banging his head on the wall; therefore, they placed him on the floor so he would not injure himself. Washington testified that he wound up face-down on the floor after he was knocked down, kicked, beaten, and verbally abused by the two men. He states Weiss and Officer Berni were unresponsive to his complaints that his back was injured and that his arm was numb from the tight handcuffs. Washington stated that another K-Mart employee came into the room while Washington was lying on the floor. Washington tried to explain the situation, hoping to gain the man’s assistance. The K-Mart employee told him, “Nigger if you don’t shut up I’ll turn ’em loose on you again.”
 

 Deborah Donaldson, Washington’s former girlfriend, testified
 
 *1185
 
 that a K-Mart employee who was searching Washington’s truck told her that she should stay away from Washington because “he seemed like a bad guy.” Officer Berni also searched Washington’s truck and his person. Officer Berni found over $600.00 in cash on Washington’s person.
 

 Washington was thereafter transported to jail by an on-duty police officer, who testified that Washington admitted to him that he had used the hair product; however, Washington vehemently denies this. Washington was charged with felony assault on a police officer (Berni), petty larceny, assault and battery and resisting a public officer making an arrest. Washington spent New Year’s Eve in jail. The felony assault charge was subsequently dropped prior to trial. Washington was tried and found not guilty on all three charges. Washington thereafter brought the instant action against K-Mart, asserting claims for false arrest, false imprisonment, assault and battery, defamation, malicious prosecution, negligent supervision and retention, conversion, and negligent and intentional infliction of emotional distress. The case proceeded to jury trial on all claims except conversion and emotional distress.
 

 The jury found in favor of K-Mart and Weiss on the claim of false arrest, and for K-Mart on the claim of negligent hiring and retention. The jury found for Washington on the claims for assault and battery, malicious prosecution, defamation, and false imprisonment and awarded him $263,156.50 in damages.
 
 [3]
 
 Following entry of judgment, K-Mart filed a motion to amend judgment, contending that: (1) the award for defamation was
 
 *1186
 
 improper because Washington failed to prove the publication element of his slander per se claims; (2) the future damages awards were not supported by necessary expert medical testimony; and (3) the expert medical testimony in the record supports only an award of $3,500.00 for assault and battery. The district court denied the motion. K-Mart appeals both the order denying the motion to amend judgment and the final district court judgment, seeking a new trial based on the trial court’s admission of a K-Mart loss prevention manual into evidence.
 

 DISCUSSION
 

 The K-Mart manual.
 

 K-Mart contends that it is entitled to a new trial based on the district court’s admission of a K-Mart loss retention manual into evidence. K-Mart argues that the manual created a higher standard of care than that imposed by applicable Nevada law pertaining to a shopkeeper’s retention of a suspected shoplifter, and therefore it was improper for the jury to consider.
 

 The decision to admit or exclude relevant evidence, after balancing the prejudicial effect against the probative value, is within the sound discretion of the trial judge.
 
 See
 
 NRS 48.035.
 
 [4]
 
 The trial court’s determination will not be overturned absent manifest error or abuse of discretion.
 
 See
 
 Jeep Corporation v. Murray, 101 Nev. 640, 646, 708 P.2d 297, 301 (1985). Discussing appellate review of such determinations, this court has stated, “ ‘[i]f the evidence is relevant, reversal is appropriate only where its prejudicial effect so outweighs its probative value that admission constitutes a clear abuse of discretion.’” Land Resources Dev. v. Kaiser Aetna, 100 Nev. 29, 34, 676 P.2d 235, 238 (1984) (quoting F/V American Eagle v. State, 620 P.2d 657, 672 (Alaska 1980)). Evidence is relevant where it has some tendency to make the existence of any material fact more or less probable than it would be without the evidence.
 
 See
 
 NRS 48.015.
 
 [5]
 

 
 *1187
 
 At trial, K-Mart argued that its actions were shielded from liability under NRS 598.030, which codifies the common law shopkeeper’s privilege. NRS 598.030 provides, in pertinent part:
 

 2. Any merchant may request any person on his premises to place or keep in full view any merchandise the person may have removed, or which the merchant has reason to believe he may have removed, from its place of display or elsewhere, whether for examination, purchase or for any other purpose. No merchant is criminally or civilly liable on account of having made such a request.
 

 3. Any merchant who has reason to believe that merchandise has been wrongfully taken by a person and that he can recover the merchandise by taking the person into custody and detaining him may, for the purpose of attempting to effect such recovery or for the purpose of informing a peace officer of the circumstances of such detention, take the person into custody and detain him, on the premises, in a reasonable manner and for a reasonable length of time. Such taking into custody and detention by a merchant does not render the merchant criminally or civilly liable for false arrest, false imprisonment, slander or unlawful detention
 
 unless the taking into custody and detention are unreasonable under all the circumstances.
 

 (Emphasis added.) NRS 598.030 grants a merchant a qualified privilege against defamatory remarks made while detaining a person who is reasonably believed to have committed theft of the store’s merchandise. The statute also shields a merchant from liability for false arrest, false imprisonment, and unlawful detention. However, this immunity only applies where the merchant’s actions are
 
 reasonable.
 
 Even where a merchant has probable cause to detain a customer, he or she may still be denied protection of the statute if it is shown the detention was unreasonable.
 
 See, e.g.,
 
 Silvia v. Zayre Corp. (Fla.Dist.Ct.App. 1970) (store lost its statutory privilege by detaining suspect for too long); Altman v. Knox Lumber Co., 381 N.W.2d 858 (Minn.Ct.App. 1986) (store owner not entitled to statutory immunity where store employee acted unreasonably in detaining suspected shoplifter); Ayscue v. Mullen, 336 S.E.2d 863 (N.C.Ct.App. 1985) (store owner not immune from liability where detention not conducted in a reasonable manner);
 
 see also
 
 Wilde v. Schwegmann Bros. Giant Supermarkets, Inc., 160 So.2d 839 (La.Ct.App. 1964). Under similar statutes, the detention has been found unreasonable where the merchant has been unnecessarily rude or used excessive force.
 
 See, e.g.,
 
 Gortarez v. Smitty’s Super Valu, Inc., 680
 
 *1188
 
 P.2d 807 (Ariz. 1984) (jury question as to whether detention was reasonable where plaintiffs were physically subdued yet held without questioning); J.C. Penney v. Cox, 148 So.2d 679 (Miss. 1963) (even assuming detention was carried out with probable cause, qualified privilege did not apply as detention was unreasonable where store manager grabbed customer and demanded payment for item in front of many customers and salespeople); Lukas v. J.C. Penney Co., 378 P.2d 717 (Or. 1963) (detention must be carried out in a reasonable manner for statute to apply).
 

 Consequently, one of the material issues in dispute was whether K-Mart’s actions in investigating the suspected shoplifting was reasonable. The K-Mart manual provides guidelines for employee encounters with a suspected shoplifter. The manual instructs employees to: (1) approach the subject in a calm manner, (2) ask the subject to return to the store, (3) suggest calling the police if the subject refuses, (4) obtain a license number if the subject leaves, and (5) notify the police. The manual further provides that the suspect should not be touched and force should never be used.
 
 [6]
 

 The jurisdictions are split as to whether a merchant’s manual is relevant to a determination of whether the merchant’s behavior is reasonable. Some courts hold that merchants’ manuals are inadmissible in false imprisonment and false arrest actions arising out of suspected shoplifting. For example, in Alvarado v. City of Dodge City, 708 P.2d 174 (Kan. 1985), the court held that a merchant’s liability for false arrest should depend on the minimum legal standards established by statute rather than on the merchant’s own standards.
 
 Id.
 
 at 185. The court stated public policy dictated that a merchant should not be penalized for establishing higher standards for its employees than the applicable statutory standards. Therefore, the court found the trial court had properly excluded the manual.
 
 Id.
 
 Similarly, nonreversible error was found where a trial court admitted a store’s rules instructing its employees on how to deal with shoplifters where statements from the employee manual might have “created doubt” in the jurors’ minds as to whether the applicable standard was that provided in the statute or the manual. Jones v. Montgomery Ward, 619 P.2d 907, 910 (Or.Ct.App. 1980).
 

 Conversely, in Luckie v. Piggly-Wiggly Southern, Inc., 325 S.E.2d 844 (Ga.Ct.App. 184), the court held it was reversible
 
 *1189
 
 error to exclude a manual instructing employees on how to deal with shoplifters in a false imprisonment case.
 
 Id.
 
 at 846. The court held the manual was relevant as to what constituted: (1) reasonable grounds to suspect shoplifting, (2) a reasonable manner of detention or arrest, and (3) a reasonable length of detention under the shopkeeper’s defense statute.
 
 Id.
 
 K-Mart’s own loss prevention manual was previously found relevant and admissible to determine the reasonableness of K-Mart’s actions in detaining a suspected shoplifter in Caldwell v. K-Mart, 410 S.E.2d 21 (S.C.Ct.App. 1991). Other courts have found the manuals admissible to show whether an agent was acting within the scope of authority in causing an arrest, and for the purpose of showing grounds for the award of punitive damages.
 
 See
 
 D. A. Johns, Annotation,
 
 Admissibility of Defendant’s Rules or Instructions for Dealing with Shoplifters, in Action for False Imprisonment or Malicious Prosecution,
 
 31 A.L.R.3d 705 (1970 & Supp. 1993).
 

 We conclude that the better rule allows a merchant’s manual to be admitted to determine the reasonableness of the merchant’s behavior. In negligence cases, self-imposed guidelines and internal policies are often admissible as relevant on the issue of failure to exercise due care.
 
 See, e.g.,
 
 K Mart Corp. v. Ponsock, 103 Nev. 60, 675 P.2d 394 (1984). Although all of Washington’s claims involved intentional torts, the crucial inquiry was nonetheless whether K-Mart’s actions in detaining Washington were reasonable. What is reasonable is ordinarily a question of fact for the jury. Since NRS 598.030 imposes a standard of reasonableness, but does not define it, the excerpts from the loss prevention manual would be relevant to aid the jurors in determining what was reasonable behavior on the part of K-Mart when detaining Washington.
 

 The jurors were not instructed to hold K-Mart to the standards enunciated in its own manual. The jurors were free to assign whatever weight they wished to the manual. K-Mart introduced evidence that the custom in the industry was to use reasonable force. The jurors also had NRS 598.030 before them. The reasonableness of K-Mart’s actions was a factual determination that the jurors could make based upon all the evidence presented at trial. Therefore, we conclude that the district court did not abuse its discretion in admitting the K-Mart manual as it was relevant to the material issue of the reasonableness of K-Mart’s actions.
 

 Whether the district court erred in refusing to instruct the jury that the standard of care set by statute, rather than the standard set by the K-Mart manual, was controlling.
 

 K-Mart’s counsel requested a jury instruction stating that NRS 598.030 is controlling in cases where the plaintiff has been
 
 *1190
 
 accused of shoplifting. The district judge refused, explaining that it was the custom in his courtroom to introduce statutory authority without any additional explanatory material. The court invited counsel for K-Mart to argue that the statute should be controlling to the jury. K-Mart contends that the district court’s refusal to instruct the jury that the statute was controlling allowed the jury to believe that any use of force by K-Mart was unreasonable, since NRS 598.030 allows a merchant to use reasonable force to detain a suspected shoplifter, but the K-Mart rules do not allow any use of force.
 

 The record reveals that extensive in-camera discussions pertaining to jury instructions took place. K-Mart attempted to introduce several instructions which would, in effect, state that NRS 598.030 “trumps” the K-Mart manual. K-Mart relies on Lerner Shops of Nevada, Inc. v. Marin, 83 Nev. 75, 423 P.2d 398 (1967), wherein this court held it was reversible error for the trial court to refuse to give instructions on NRS 598.030 in a false imprisonment trial. The facts of the instant case are readily distinguishable. Here, the court gave instructions on NRS 598.030; it merely refused to allow further elaboration on the statute as requested by K-Mart. A party is entitled to have the jury instructed on all of its theories of the case that are supported by evidence and consistent with existing law. Beattie v. Thomas, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983). However, where the instructions given adequately cover the applicable law, it is not error to refuse to give additional instructions on the same subject.
 
 Id.
 
 at 585, 668 P.2d at 271;
 
 see also
 
 Crown Controls Corp. v. Corella, 98 Nev. 35, 639 P.2d 555 (1982). Had K-Mart offered an instruction explaining that the manual was not law, but could be considered in determining whether K-Mart’s actions were reasonable, the district court may well have been obligated to give said instruction. Such an instruction would assist this jury in understanding the interplay between NRS 598.030 and the K-Mart manual. However, no such instruction was requested. We conclude that the jury instructions given adequately covered the applicable law; therefore, it was not error for the district court to refuse to give further instructions on the same subject.
 

 Whether sufficient evidence supports the jury’s finding of defamation.
 

 Washington claimed that K-Mart defamed him on three separate occasions. First, Washington claimed that K-Mart falsely told Officers Berni and Guthrie that he had used the hair product without paying for it. Next, Washington alleged that K-Mart made a defamatory statement about him to his girlfriend,
 
 *1191
 
 Deborah Donaldson, that he “seemed to be a bad guy.” Finally, Washington asserted that the act of being handcuffed and marched through the store to the security office constitutes slander per se.
 

 To prevail on a defamation claim, a party must show publication of a false statement of fact. Wellman v. Fox, 108 Nev. 83, 86, 825 P.2d 208, 210 (1992). Whether or not a statement is capable of defamatory construction is a question of law for the court. In Branda v. Sanford, 97 Nev. 643, 637 P.2d 1223 (1981), this court stated:
 

 It is generally accepted that for both libel and slander it is a question of law and, therefore, within the province of the court, to determine if a statement is capable of a defamatory construction. If susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.
 

 Id.
 
 at 646, 637 P.2d at 1225-26 (citations omitted). A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt. Las Vegas Sun v. Franklin, 74 Nev. 282, 287, 329 P.2d 867, 869 (1958);
 
 see
 
 Posadas v. City of Reno, 109 Nev. 448, 851 P.2d 438 (1993).
 

 We agree with K-Mart that the statements made by Weiss to the police and the statement made to Deborah Donaldson are not actionable. Although the trial court made no findings in this regard, it is likely the statements made to the police would be subject to a qualified privilege under NRS 598.030. Alternatively, the statements could be deemed communications preliminary to a judicial proceeding under Restatement (Second) of Torts § 587 and would therefore be absolutely privileged if made in good faith.
 
 [7]
 
 Similarly, the statement that Washington “seemed like a bad guy” is likely nonactionable opinion. Ultimately, a
 
 *1192
 
 claim for ordinary slander would fail because Washington did not prove special damages at trial. To prevail on a defamation claim, a party must show publication of a false statement of fact that causes damage. Wellman v. Fox, 108 Nev. 83, 86, 825 P.2d 208, 210 (1992),
 
 cert.
 
 denied, _ U.S. _, 113 S.Ct. 68 (1992). As a general rule, only assertions of fact, not opinion, can be defamatory.
 
 Id.
 
 However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false.
 
 See
 
 Milkovich v. Lorain Journal Co., 497 U.S. 121-22 (1990). However, even if the statements were defamatory, a plaintiff must also show special damage as a part of a prima facie case of ordinary slander.
 
 See
 
 Branda v. Sanford, 97 Nev. 643, 637 P.2d 1223 (1981). Washington did not present any evidence of damage to his reputation nor of special damages arising from any of the three alleged instances of defamation. Therefore, a claim for ordinary slander would fail due to a lack of evidence of special damages.
 

 On the other hand, we agree with Washington that the act of being handcuffed and marched through the store to the K-Mart security office and the statements made by K-Mart constitute slander per se. Words or conduct or the combination of words and conduct can communicate defamation.
 
 See
 
 Mains v. K Mart Corp., 375 S.E.2d 311 (S.C.Ct.App. 1988). A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt. Las Vegas Sun v. Franklin, 74 Nev. 282, 287, 329 P.2d 867, 869 (1958).
 

 Certain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. The four types of slander historically designated as defamatory
 
 per se
 
 are false statements made involving: (1) the imputation of a crime; (2) the imputation of having a loathsome disease; (3) imputing the person’s lack of fitness for trade, business, or profession; and (4) imputing serious sexual misconduct.
 
 See
 
 Carey v. Piphus, 435 U.S. 247, 262 n.18 (1977); Branda v. Sanford, 97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981). No proof of any actual harm to reputation or any other damage is required for the recovery of damages for these four kinds of slander. W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 112, at 788 (5th ed. 1984). “Otherwise stated, proof of the defamation itself is considered to establish the existence of
 
 *1193
 
 some damages, and the jury is permitted, without other evidence, to estimate their amount.”
 
 Id.
 

 The record reflects that the district court considered the statements made by Weiss and Officer Berni and the act of leading Washington through the store in handcuffs to be capable of defamatory construction, in fact, that it was slander per se:
 

 THE COURT: If we, in fact, take the allegation made by Mr. Weiss — if we take his version of the story, and Officer Berni’s version of the story now, where they state that they not only asked him to stop, but identified themselves and stated that, “You used part of this product without paying for it, and we want you to come back into the store,” that is the allegation of a commission of a crime, is it not?
 

 [T]here are cases that say when you cause one to be marched through a populated area in handcuffs, nothing needs to be said. That alone is the same as the allegation of the commission of a crime.
 

 We’ve already discussed that defamation per se requires no proof of damages. Damages are presumed. And this is an allegation of a crime, which is one of the four instances, based on the hornbook, of defamation per se. . . .
 

 We agree with the analysis of the district court. The imputation of shoplifting, by words or by pantomime, if communicated to a third party, is unquestionably slander per se.
 
 See
 
 Safeway Stores v. Rogers, 56 S.W.2d 429 (Ark. 1933); American Stores Co. v. Byrd, 181 A.2d 333 (Md. 1962); Tumbarella v. Kroger Co., 271 N.W.2d 284 (Mich.App. 1978); Southwest Drug Stores v. Garner, 195 So.2d 837 (Miss. 1967); Hall v. Heavey, 481 A.2d 294 (N.J.Super.Ct.App.Div. 1984); Mains v. K-Mart Corp., 375 S.E.2d 311 (S.C.Ct.App. 1988);
 
 see also,
 
 G. H. Genzel, Annotation,
 
 Defamation: Actionability of Accusation of Imputation of Shoplifting,
 
 29 A.L.R.3d 961 (1970 & Supp. 1993). We conclude, as a matter of law, that the words and conduct of K-Mart were capable of defamatory construction in that the pantomime imputes criminal conduct to Washington. “[T]he truth or falsity of an allegedly defamatory statement is an issue of fact properly left to the jury for resolution.” Posadas v. City of Reno, 109 Nev. 448, 453, 851 P.2d 438, 442 (1993).
 

 Washington testified that Weiss and Officer Berni grabbed him, chased him, tackled him, handcuffed him, and then led him back into the store in front of a crowd of people. Weiss testified that he approached Washington with a bottle of hair spray in his hand and
 
 *1194
 
 stated, “Excuse me, sir, I’m from K-Mart security. I need you to come back in the store about using this product.” Officer Berni testified that he questioned Washington in a similar fashion and handcuffed him in front of a crowd of people. The language
 
 alone
 
 that Weiss used to address Washington was arguably susceptible of innocent construction. However, the combination of words and actions together constitutes slander per se as it would impute, to a reasonable person, that Washington was a thief. There is sufficient evidence in the record to indicate that the language and actions were published, by communication to other shoppers, including witness Joyce Gantz, and the crowd in the parking lot.
 
 See
 
 M & R Investment Co. v. Mandarino, 103 Nev. 709, 715, 748 P.2d 488, 491 (1987) (publication may be proven by direct or circumstantial evidence of communication to a third person). We conclude, therefore, that there was substantial evidence to support the jury’s finding of defamation.
 

 Damages for defamation.
 

 K-Mart contends that any injury to Washington from defamation is subjective in nature and must be supported by expert medical testimony. K-Mart also argues that Washington did not prove any special damages; therefore, no recovery for general damages can be awarded. Only the latter argument merits serious discussion. As discussed previously, in an ordinary slander action, special damages must be proven, as an element of the cause of action, before any recovery will be allowed the plaintiff. Branda v. Sanford, 97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981). Special damages are quantifiable monetary losses that flow directly from the injury to reputation caused by the defamation, e.g., loss of business.
 
 Id.
 
 at 647, 637 P.2d at 1226;
 
 see
 
 NRS 41.335. Once special damages are proven, general damages will be presumed. General damages in a defamation case represent the other effects of the defamation on the plaintiff, including loss of reputation, shame, mortification and hurt feelings.
 
 See
 
 NRS 41.334. Such damages need not be supported by expert medical testimony.
 

 A statement is considered slander per se, and thus actionable without a showing of special damages, if it imputes that the plaintiff has committed a crime, here shoplifting.
 
 Branda,
 
 97 Nev. at 646, 637 P.2d at 1225. As noted by the United States Supreme Court:
 

 [T]he doctrine of presumed damages in the common law of defamation
 
 per se
 
 “is an oddity of tort law, for it allows
 
 *1195
 
 recovery of purportedly compensatory damages without evidence of actual loss.”
 
 Gertz
 
 v.
 
 Robert Welch, Inc.,
 
 418 U.S. 323, 349 (1974). The doctrine has been defended on the grounds that those forms of defamation that are actionable
 
 per se
 
 are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove. See
 
 id.,
 
 at 373, 376 (White, J., dissenting). Moreover, statements that are defamatory
 
 per se
 
 by their very nature are likely to cause mental and emotional distress, as well as injury to reputation, so there arguably is little reason to require proof of this kind of injury either.
 

 Carey v. Piphus, 473 U.S. 247, 262 (1978) (footnotes omitted). Damages for slander per se include harm to the reputation of the person defamed, or, absent proof of such harm, “‘for the harm which normally results from such a defamation.’” Gertz v. Robert Welch, Inc., 418 U.S. 323, 372 (White, J., dissenting) (quoting Restatement of Torts § 621 (1938)). “At the heart of the libel-and-slander-per-se damage scheme [lies] the award of general damages for loss of reputation.”
 
 Gertz,
 
 418 U.S. at 372-73 (White, J., dissenting). Such damages are granted
 

 without special proof because the judgment of history [is] that the content of the publication itself [is] so likely to cause injury and because “in many cases the effect of defamatory statements is so subtle and indirect that it is impossible directly to trace the effects thereof in loss to the person defamed.”
 

 Id.
 
 at 373. Proof of the defamation itself establishes the fact of injury and the existence of damage to the plaintiff’s reputation.
 
 Id.
 
 at 373 n.3. The jury is permitted to assess damages considered to be the natural and probable consequences of the defamatory words on proof of the defamation alone.
 
 Id.
 
 Damages are presumed “because of the impossibility of affixing an exact monetary amount for present and future injury to the plaintiff’s reputation, wounded feelings and humiliation, loss of business, and any consequential physical illness or pain.”
 
 Id.
 
 (citations omitted).
 

 It is uncertain as to which statements or actions the jury found defamatory. Nonetheless, where there is substantial evidence to support a jury verdict under one of several theories, the judgment will not be overturned on appeal. Ramada Inn v. Sharp, 101 Nev. 824, 826, 711 P.2d 1, 2 (1985). We conclude that there is substantial evidence in the record to support a finding of defamation per se by the combination of words and actions taken. Once
 
 *1196
 
 the jury found Washington had been per se defamed by K-Mart, the jury was free to award Washington the $25,000.00 in future general damages and $20,000.00 in past general damages on proof of such defamation alone. We conclude that the award of damages for defamation was proper.
 

 Assault and battery.
 

 The jury also awarded Washington future general and special damages of $60,000.00 arising from the assault and battery claim. K-Mart asserts that the medical testimony of Dr. Soroosh, Washington’s treating physician, supports only an award of $3,500.00 for future medical expenses on the assault and battery claim, the approximate costs of the medical testing and treatment the doctor stated Washington would need.
 

 In Lerner Shops v. Marin, 83 Nev. 75, 423 P.2d 398 (1967), the plaintiif brought an action for false imprisonment, seeking recovery for shock, humiliation, nausea, and loss of reputation arising from an accusation of shoplifting.
 
 Id.
 
 at 77, 423 P.2d at 400. This court held that recovery for future pain and suffering arising from subjective physical injury must be substantially supported by expert testimony stating that future pain and suffering is a probable consequence rather than a mere possibility.
 
 Lerner,
 
 83 Nev. at 79-80, 423 P.2d at 401;
 
 see also
 
 Prabhu v. Levine, 109 Nev. 607, 855 P.2d 543 (1993).
 

 Washington testified that he was kicked, beaten, called a “nigger,” and tackled by Weiss and Officer Berni. He testified that his back, arm, and head were injured, and that he had headaches and dizziness, as well as bruises, cuts and scars from the incident. Washington stated that he continues to have headaches, lacks arm strength, and that he has pain in his back and neck at various times when walking, standing, and sitting. He stated that his ability to participate in sports is reduced. However, Washington failed to supplement his own testimony with the required expert testimony. The medical testimony at trial supports only an award of future medical expenses of $3,500.00. Thus, it is reasonable to conclude that the bulk of the jury award was attributable to future general damages. Washington did not present adequate medical testimony as to future pain and suffering arising from the assault and battery. When asked if Washington’s condition would continue until future treatment was received, Dr. Soroosh stated: “I think [it] would. It again depends on the extent of findings on the studies that we will be doing.” The jury could not plainly infer from the evidence presented at trial that future pain and suffering as a result of the assault and battery was a probable consequence rather than a mere possibility. Accordingly, we conclude that the
 
 *1197
 
 future damages award for assault and battery should be reduced to $3,500.00.
 

 Malicious prosecution.
 

 K-Mart argues that any injury to Washington from malicious prosecution is subjective in nature and must be supported by expert medical testimony. In a malicious prosecution action, a plaintiff may recover general money damages to recover for injury to reputation, humiliation, embarrassment, mental suflfer-ing and inconvenience proximately caused by the defendant’s action. Miller v. Schnitzer, 78 Nev. 301, 308, 371 P.2d 824, 828 (1962). The monetary extent of such damage cannot be calculated by reference to an objective standard, but “‘by its very nature, falls peculiarly within the province of the trier of fact.’ ” Hernandez v. City of Salt Lake, 100 Nev. 504, 508, 686 P.2d 251, 253 (1984) (quoting Miller v. Schnitzer, 78 Nev. 301, 308, 371 P.2d 824, 828 (1962)). The only limitation upon the judgment of the jury in this regard is that the damages awarded must not have been influenced by passion or prejudice.
 
 Id.
 
 Under
 
 Hernandez,
 
 the jury did not need expert medical testimony to assist in determining whether Washington was humiliated, embarrassed, and inconvenienced by K-Mart’s criminal prosecution of him. We conclude that the award of $15,000.00 for future damages for malicious prosecution was supported by sufficient evidence.
 

 CONCLUSION
 

 The K-Mart loss prevention manual was relevant and admissible to assist the jury in determining what constitutes reasonable conduct under NRS 598.030; therefore, the district court did not abuse its discretion in admitting the manual. Further, we deny K-Mart’s request for a new trial. There was similarly no abuse of discretion in the district court’s refusal to elaborate cn NRS 598.030 as urged by K-Mart’s proffered jury instructions. We further conclude that there was sufficient evidence to support the jury’s finding of slander per se and the award of both past and future damages for such defamation. We conclude that the medical testimony introduced at trial supports only $3,500.00 in future damages for assault and battery. Accordingly, we direct the district court to reduce the damages award consistent with this opinion. The jury verdict is otherwise affirmed in all regards.
 

 [1]
 

 Washington alleged that K-Mart had hired and retained a racist.
 

 [2]
 

 Washington testified that he did not see Weiss carrying a bottle of the hair product.
 

 [3]
 

 The jury award was as follows:
 

 Past Damages
 

 False Imprisonment. $5,000.00
 

 Assault and Battery. 1,002.00
 

 Malicious Prosecution. 2,000.00
 

 Defamation. 20,000.00
 

 Total. $28,002.00
 

 Future Damages
 

 Assault and Battery. $60,000.00
 

 Malicious Prosecution. 15,000.00
 

 Defamation. 25,000.00
 

 Total. $100,000.00
 

 Punitive Damages against Weiss
 

 Defamation. $42.00
 

 Malicious Prosecution. 112.50
 

 Total.I $154.50
 

 Punitive Damages against K-Mart
 

 Defamation. $75,000.00
 

 Malicious Prosecution. 60,000.00
 

 Total. $135,000.00
 

 Grand Total. $263,156.50
 

 [4]
 

 NRS 48.035 provides, in pertinent part:
 

 1. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.
 

 2. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence.
 

 [5]
 

 NRS 48.015 provides:
 

 “Relevant evidence” defined. As used in this chapter, “relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.
 

 [6]
 

 The K-Mart guidelines are stricter than most state statutes. Most states, including Nevada, permit a shopkeeper to use reasonable force to detain a suspected shoplifter for a reasonable period and in a reasonable manner where a shopkeeper has a reasonable suspicion that a person has stolen goods.
 
 See
 
 Robert A. Brazener, Annotation,
 
 Construction and Effect, in False Imprisonment Action, of Statute Providing for Detention of Suspected Shoplifters,
 
 47 A.L.R.3d 998 (1973 & Supp. 1993).
 

 [7]
 

 The common law absolute privilege rule pertaining to judicial proceedings is set forth in Restatement (Second) of Torts § 587 (1977):
 

 A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.
 

 Comment e to § 587 provides: “As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. ...”
 
 See also
 
 Circus Circus Hotels v. Witherspoon, 99 Nev. 56, 657 P.2d 101 (1983).