137 Nev., Advance Opinion 73

IN THE SUPREME COURT OF THE STATE OF NEVADA

NICOLA SPIRTOS, AN INDIVIDUAL,
Appellant,
vs.
ARMEN YEMENIDJIAN, AN
INDIVIDUAL,
Respondent.

No. 80922

**FILED**

DEC 02 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying an anti-SLAPP motion to dismiss in a tort action. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed.*

McNutt Law Firm, P.C., and Daniel R. McNutt and Matthew C. Wolf, Las Vegas,
for Appellant.

Pisanelli Bice PLLC and Todd L. Bice, Jordan T. Smith, and Emily A. Buchwald, Las Vegas,
for Respondent.

_____

BEFORE THE SUPREME COURT, HARDESTY, C.J., STIGLICH and CADISH, JJ.

21-34318

*OPINION*

By the Court, HARDESTY, C.J.:

NRS 41.635-.670 are commonly referred to as Nevada's "anti-SLAPP" statutes, which stands for "anti-Strategic Lawsuit Against Public Participation." Generally speaking, the anti-SLAPP statutes provide a two-step procedural mechanism by which a district court, upon a party's special motion to dismiss, can summarily dismiss a meritless lawsuit aimed at chilling speech. *See* NRS 41.660(3)(a)-(b).

Under step one of the anti-SLAPP evaluation, the district court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). The primary issue presented in this case is how a district court at step one of the anti-SLAPP evaluation should proceed when the moving party denies making the alleged communication. Based on the plain language of NRS 41.660(3)(a), we conclude that a moving party's denial has no relevance at step one of the anti-SLAPP evaluation. Consequently, the district court in this case correctly used plaintiff/respondent Armen Yemenidjian's version of the alleged defamatory statement during its step-one analysis.

Nonetheless, defendant/appellant Nicola Spirtos argues on appeal that the district court should have granted his anti-SLAPP motion, as even Yemenidjian's version of Spirtos' statement was entitled to anti-SLAPP protection. In this, Spirtos asserts that because the alleged statement was made in good faith in furtherance of an issue of public concern, it was covered by anti-SLAPP protections. Alternatively, Spirtos argues that the district court should have granted his motion because

Yemenidjian's version of his statement was a nonactionable opinion. While we agree that the district court erroneously determined Spirtos' alleged statement did not fall within the definition of a public interest communication, Spirtos has not attempted to show that the alleged statement was true or made without knowledge of its falsehood. Consequently, he has not established by a preponderance of the evidence that his statement was made in good faith. And, because we disagree with Spirtos' alternative argument that his alleged statement was a nonactionable opinion, we affirm the district court's order denying Spirtos' anti-SLAPP motion.

## FACTS AND PROCEDURAL HISTORY

Appellant Nicola Spirtos is a self-described "prominent and highly accomplished gynecologic oncologist." Spirtos is also the former co-owner of D.H. Flamingo, Inc., a Nevada corporation with a medical-marijuana license and a medical-marijuana establishment in Las Vegas. Respondent Armen Yemenidjian is a self-described "executive[ ] in the legal cannabis business" whose companies have successfully applied for 22 medical- and recreational-marijuana licenses in Nevada and California. By all accounts, Spirtos and Yemenidjian's relationship can be described as acrimonious.

In 2018, D.H. Flamingo submitted three applications for recreational-marijuana licenses to the Nevada Department of Taxation. The Department denied D.H. Flamingo's applications. Following the Department's denial, D.H. Flamingo and several other unsuccessful applicants sued the Department and many of the successful applicants, including some of Yemenidjian's former companies. They alleged, among other things, that the licensing process "was corrupted and certain application[s] were favored over others." Two weeks after the suit was filed,

Spirtos attended Governor Steve Sisolak's inaugural gala on behalf of D.H. Flamingo. While at the gala, Spirtos spoke with John Oceguera, a former Nevada Assemblyperson and then-lobbyist for certain Nevada marijuana companies, including Yemenidjian's former companies. The specifics of Spirtos' conversation with Oceguera are disputed, but it is undisputed that Spirtos conveyed his belief (as D.H. Flamingo had alleged in its lawsuit against Yemenidjian's former companies) that the Department's licensing process was corrupt. It is likewise disputed whether Spirtos specifically mentioned Yemenidjian during the conversation, but it is undisputed that following the conversation, Oceguera relayed the contents of the conversation to Yemenidjian.

Nine months after the conversation between Spirtos and Oceguera, Yemenidjian sued Spirtos for slander and conspiracy, alleging that Spirtos had accused him of criminal activity in Spirtos' conversation with Oceguera. In particular, Yemenidjian's complaint alleged that "Spirtos proceeded to slander Mr. Yemenidjian, claiming to Oceguera that Mr. Yemenidjian had engaged in outright corruption in order to secure licenses. This statement falsely accused Mr. Yemenidjian of criminal activity, just as Spirtos had intended it."

Spirtos filed an anti-SLAPP motion to dismiss, in which he denied mentioning Yemenidjian by name in his conversation with Oceguera and alleged that he instead had commented that the marijuana-licensing process in general had been corrupted. Spirtos contended that his version of his statement could not form the basis for liability because it was "a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern" and thus protected by the anti-SLAPP statutes. *See* NRS 41.660(3). In particular, Spirtos contended that his statement satisfied NRS 41.637(4)'s definition of

the type of "good faith communication" protected under NRS 41.660(3), namely, one "made in direct connection with an issue of public interest in a place open to the public or in a public forum, which is truthful or is made without knowledge of its falsehood."[1] NRS 41.637(4). Spirtos attached a declaration to his motion wherein he listed several reasons why he believed the licensing process had been corrupted, and he reiterated that he never mentioned Yemenidjian by name in his conversation with Oceguera.

Yemenidjian opposed Spirtos' motion, arguing that Spirtos could not deny making a statement about Yemenidjian in his conversation with Mr. Oceguera while simultaneously contending that any such statement was truthful or made without knowledge of its falsity. Relatedly, Yemenidjian also observed that Spirtos' declaration failed to explain how any such statement about Yemenidjian could have been truthful or made without knowledge of its falsity. Additionally, Yemenidjian attached a declaration from Oceguera, wherein he attested that

> [d]uring our conversation, Dr. Spirtos stated that *Armen Yemenidjian was knee deep in the corruption* at the center of the licensing process for recreational cannabis licenses that the State of Nevada had awarded in early December 2018. I was taken aback about the allegation that Mr. Yemenidjian had supposedly corrupted the process. I was sufficiently startled by Dr. Spirtos' statements that insinuated a crime that I subsequently spoke with Mr. Yemenidjian about Dr. Spirtos' accusation.

---

[1]Spirtos also argued that his statement satisfied NRS 41.637(3)'s definition of a protected good faith communication. In light of our resolution of this appeal, we need not decide whether Spirtos' statement satisfied NRS 41.637(3).

(Emphasis added.) Yemenidjian's opposition additionally argued that Spirtos' statement could not satisfy NRS 41.637(4)'s definition because Yemenidjian's alleged corruption was not a matter of public interest and because Spirtos' private conversation with Oceguera was not a public forum.

In reply, Spirtos contended that even if Yemenidjian's version of Spirtos' conversation with Oceguera were accurate, that version would constitute a nonactionable opinion because no reasonable person would believe that Spirtos' statement was a factual statement. *Cf. Abrams v. Sanson*, 136 Nev. 83, 89, 458 P.3d 1062, 1068 (2020) ("Because there is no such thing as a false idea, statements of opinion are statements made without knowledge of their falsehood under Nevada's anti-SLAPP statutes." (citation omitted) (internal quotation marks omitted)).

Following a hearing, the district court denied Spirtos' motion to dismiss. In so doing, the district court accepted as accurate Yemenidjian's version of Spirtos' statement to Oceguera and found that the statement did not satisfy NRS 41.637(4)'s definition because Spirtos' allegation that his competitor was corrupt was a personal matter and was made in a private conversation. The district court did not consider Spirtos' argument that his statement was a nonactionable opinion. Spirtos now appeals.

## DISCUSSION

We review de novo a district court's denial of an anti-SLAPP motion to dismiss. *Coker v. Sassone*, 135 Nev. 8, 11, 432 P.3d 746, 749 (2019). In so doing, "[w]e exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based." *Id.* (quoting *Park v. Bd. of Trs. of Cal. State Univ.*, 393 P.3d 905, 911 (Cal. 2017)).

*Spirtos' denial that he made the alleged statement is irrelevant to step one of the anti-SLAPP analysis*

As indicated, evaluation of an anti-SLAPP motion to dismiss involves a two-step analysis. See NRS 41.660(3)(a)-(b). At step one, the court must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). If successful, the court advances to step two, wherein the court must "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." NRS 41.660(3)(b). If the defendant fails to satisfy step one, the court need not evaluate step two. *Coker*, 135 Nev. at 12, 432 P.3d at 749.

Spirtos' primary argument on appeal in support of reversal is that he did not mention Yemenidjian by name in his conversation with Oceguera and that, consequently, he could not have slandered Yemenidjian. For support, he relies on his own declaration wherein he acknowledged saying that *the Department's licensing process* had been corrupted but reiterated that he did not mention Yemenidjian by name, much less insinuate that Yemenidjian was corrupt.

We conclude that the district court correctly disregarded Spirtos' declaration at step one of its analysis. This conclusion is based on the plain language of NRS 41.660(3)(a), which, again, requires the district court to "[d]etermine whether the moving party has established, by a preponderance of the evidence, that *the claim* is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." (Emphasis added.) *See City Council of Reno v. Reno Newspapers, Inc.*, 105 Nev. 886,

Supreme Court
of
Nevada

(O) 1947A

7

891, 784 P.2d 974, 977 (1989) ("When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it."). By hinging the step-one analysis on "the claim," NRS 41.660(3)(a) unambiguously provides that the district court should evaluate the statement forming the basis of the plaintiff's complaint, which, in this case, was the version of the statement that Yemenidjian alleged Spirtos made. *See Hersh v. Tatum*, 526 S.W.3d 462, 466-67 (Tex. 2017) (holding that under Texas's analog to NRS 41.660(3)(a), the relevant step-one inquiry is to consider the statement as alleged in the plaintiff's pleadings). Additionally, NRS 41.660(3)(a) unambiguously requires that the statement be a "good faith communication," which NRS 41.637 defines as a communication that "is truthful or is made without knowledge of its falsehood." In other words, when pursuing an anti-SLAPP special motion to dismiss, Spirtos cannot deny accusing Yemenidjian of corruption in his conversation with Oceguera while simultaneously contending that this (non)accusation was truthful or made without Spirtos' knowledge of its falsehood. *Cf. Shapiro v. Welt*, 133 Nev. 35, 40, 389 P.3d 262, 268 (2017) ("[N]o communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'" (quoting NRS 41.637)).

Accordingly, we conclude that at step one of the anti-SLAPP analysis, a district court and this court must evaluate the communication as it is alleged in the plaintiff's complaint and in any of the plaintiff's clarifying declarations. *Rosen v. Tarkanian*, 135 Nev. 436, 441, 453 P.3d 1220, 1224 (2019) (observing that at step one of the anti-SLAPP analysis, a court should evaluate whether the "gist or sting" of the at-issue statement is a protected communication). Therefore, Spirtos' denial that he mentioned Yemenidjian in his conversation with Oceguera does not provide a basis for

reversing the district court's order. *Cf. Freeman v. Schack*, 64 Cal. Rptr. 3d 867, 877-78 (Ct. App. 2007) (noting that a defendant's denial of the plaintiff's allegations is a merits-based defense and that "merits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity [under California's analog to NRS 41.660(3)(a)]," because where the defendant "cannot meet his threshold showing, the fact he might be able to otherwise prevail on the merits under the probability step is irrelevant" (internal quotation marks omitted)).

*Spirtos' alleged statement was made in direct connection with an issue of public interest in a place open to the public or in a public forum, but he has not shown that the alleged statement was made in good faith*

Spirtos next contends that reversal is warranted because the district court erroneously determined his statement, as alleged by Yemenidjian, was not "in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). He contends that under NRS 41.637(4)'s definition of that requirement, the district court erroneously determined that his statement did not fall within NRS 41.660(3)(a)'s protection by finding that Spirtos' statement involved a personal grudge (with Yemenidjian) and was made in a private conversation (with Oceguera).

We agree with Spirtos that his statement, as alleged by Yemenidjian, was "made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS 41.637(4). In *Shapiro v. Welt*, this court adopted the California courts' following five-factor framework for evaluating whether a statement falls within NRS 41.637(4)'s definition:

(1) "public interest" does not equate with mere curiosity;

(2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;

(3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;

(4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and

(5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

133 Nev. at 39-40, 389 P.3d at 268 (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)).

Here, we acknowledge the district court's undisputed finding that Spirtos made his alleged statement to only one person (Oceguera). However, this finding has relevance, arguably, to only the fourth factor.[2]

---

[2]Yemenidjian contends that "[a] plain reading of NRS 41.637(4) should exclude private conversations like the one between Spirtos and Oceguera." While it may be intuitively appealing to exclude private conversations from the anti-SLAPP statutes' purview, a "plain reading" of NRS 41.637(4) requires that the communication simply be made "in a place open to the public or in a public forum," such as the inaugural gala in this case. Beyond Yemenidjian's "plain reading" argument, he has not provided any authority to support the proposition that a private communication cannot be subject to anti-SLAPP protection. And our own research of California caselaw suggests a split in holdings as to the protections afforded private conversations. *See, e.g.*, *Macias v. Hartwell*, 64 Cal. Rptr. 2d 222, 225 (Ct. App. 1997) (recognizing that private conversations are afforded

Supreme Court
of
Nevada

(O) 1947A

10

On the other hand, under the first and second factors, it cannot reasonably be disputed that alleged corruption in a public agency is of concern to a substantial number of people, including the thousands of Nevada taxpayers who fund the Department. *See, e.g., Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988) ("The public is legitimately interested in all matters of corruption . . . ."); *see also Healthsmart Pac., Inc. v. Kabateck*, 212 Cal. Rptr. 3d 589, 599 (Ct. App. 2016) (holding that "assertions of a widespread illegal physician kickback scheme raise issues concerning the integrity of the health care system, which is a matter of widespread public concern"). And under the third factor, there was some degree of closeness between Spirtos' statement and the asserted public interest of public corruption, as Oceguera's declaration attested that Spirtos said that "Yemenidjian was knee deep in the corruption at the center of the licensing process for recreational cannabis licenses that the State of Nevada had awarded" and "had supposedly corrupted the process," which is directly related to the specifics of the alleged corruption. Finally, returning to the fourth factor, it is apparent from Oceguera's declaration—wherein he attested that "I was sufficiently startled by Dr. Spirtos' statements that insinuated a crime that I subsequently spoke with Mr. Yemenidjian about Dr. Spirtos' accusation"—that *Oceguera* interpreted Spirtos' statement as something more than "a mere effort to gather ammunition for another

anti-SLAPP protection); *see also Bikkina v. Mahadevan*, 193 Cal. Rptr. 3d 499, 507-08 (Ct. App. 2015) (recognizing that a statement's entitlement to anti-SLAPP protection "depends on whether the means of communicating the statement permits open debate" (internal quotation marks omitted)). Thus, we conclude that this particular case is ill suited to consider adopting such a rule. *Cf. Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (observing that it is a party's responsibility to provide salient authorities in support of an argument).

round of private controversy." *Shapiro*, 133 Nev. at 39, 389 P.3d at 268 (internal quotation marks omitted). Accordingly, we conclude that Spirtos' alleged statement *was* "made in direct connection with an issue of public interest in a place open to the public or in a public forum." NRS 41.637(4).

Nonetheless, this conclusion does not provide a viable basis to reverse the district court's order because, as discussed previously, as part of the district court's analysis during the first step, the district court must also find Spirtos' statement was a "good faith communication." NRS 41.660(3)(a). A "good faith communication" is a communication that "is truthful or is made without knowledge of its falsehood." NRS 41.637. In his declaration that he attached to his anti-SLAPP motion, Spirtos listed several factual bases in support of his belief that *the Department's* licensing process was corrupted. However, as mentioned above, Spirtos' declaration contained no factual bases for why he believed *Yemenidjian* was involved in the corruption and instead denied mentioning Yemenidjian by name. Absent a factual basis for why Spirtos believed his alleged statement regarding Yemenidjian's involvement in corruption was true, Spirtos necessarily failed to establish by a preponderance of the evidence that his statement, as alleged by Yemenidjian, was "truthful or [was] made without knowledge of its falsehood." NRS 41.637. He therefore failed to establish by a preponderance of the evidence that his alleged statement was a "good faith communication," even if the alleged statement was "in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). *Cf. Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342, 347 (2020) (holding that under NRS 41.660(3)(a)'s preponderance-of-the-evidence standard, "an affidavit stating that the defendant believed the communications to be truthful or made them

without knowledge of their falsehood is sufficient to meet the defendant's burden absent contradictory evidence in the record").

*Spirtos' alleged statement did not constitute a nonactionable opinion*

Spirtos' final argument in support of reversal is that his statement, as alleged in Yemenidjian's complaint and clarified in Oceguera's declaration, was simply Spirtos' "opinion" that was not capable of being untrue or being made with knowledge of its falsehood. *Cf. Abrams v. Sanson*, 136 Nev. 83, 89, 458 P.3d 1062, 1068 (2020) ("Because there is no such thing as a false idea, statements of opinion are statements made without knowledge of their falsehood under Nevada's anti-SLAPP statutes." (citation omitted) (internal quotation marks omitted)). In support of this argument, Spirtos relies primarily on the U.S. Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, which held that a statement of opinion on a matter of public concern "which does not contain a provably false factual connotation" constitutes a nonactionable opinion, 497 U.S. 1, 20 (1990), and recognized that "loose, figurative, or hyperbolic language [tends to] negate the impression that the [speaker] was seriously maintaining that [the defamed party] committed [a] crime," *id.* at 21. Under *Milkovich*, Spirtos contends that his alleged statement that Yemenidjian "was knee deep in the corruption at the center of the licensing process" is "too vague and generalized" to have any provably false factual connotation and that the phrase "knee deep" is the type of hyperbolic language that negates any impression that Spirtos was seriously accusing Yemenidjian of committing a crime.

We disagree.[3] To be sure, the accusation that Yemenidjian was "knee deep" in corruption arguably is the sort of hyperbolic and factually unprovable language that would negate the impression that Spirtos was seriously alleging that Yemenidjian was corrupt. *Cf. 600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937-38 (N.Y. 1992) (holding that an accusation that a landlord's lease was "as fraudulent as you can get and it smells of bribery and corruption" was an opinion because of the colloquial language, the absence of specific allegations, and because it was delivered as part of a "rambling, table-slapping monologue" at a community board meeting (internal quotation marks omitted)). However, "[a]ccusing a public official of corruption is ordinarily defamatory *per se*,"[4] *Bentley v. Bunton*, 94 S.W.3d 561, 582 (Tex. 2002) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 791-92 (5th ed. 1984)), and "expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false," *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1192, 866 P.2d 274, 282 (1993) (citing *Milkovich*, 497 U.S. at 22), *receded from on other*

---

[3]In passing, Spirtos cites *Miller v. Jones*, 114 Nev. 1291, 1296, 970 P.2d 571, 575 (1998), for the proposition that "where a statement is susceptible of multiple interpretations, one of which is defamatory, the resolution of this ambiguity is left to the finder of fact." As indicated, the district court did not address Spirtos' argument that his statement constituted a nonactionable opinion, and Spirtos does not coherently argue on appeal that a remand to the district court for resolution of any potential ambiguity is appropriate at step one of the anti-SLAPP analysis. We therefore exercise our independent judgment in concluding that his alleged statement constituted an actionable factual statement.

[4]We recognize that Yemenidjian may not be a public "official." Nonetheless, Spirtos contended in district court that Yemenidjian should be deemed a limited-purpose public "figure."

*grounds by Pope v. Motel 6*, 121 Nev. 307, 316, 114 P.3d 277, 283 (2005). Here, we believe it is disingenuous for Spirtos to pass himself off as simply an uninformed member of the general public who is incapable of having factual support for his allegations of corruption when he has previously described himself in this case as "a prominent and highly accomplished gynecologic oncologist" who "spearheaded" the marijuana license applications that D.H. Flamingo presented to the Department.

Moreover, in determining whether a statement is an opinion or a fact, this court considers "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Lubin v. Kunin*, 117 Nev. 107, 112, 17 P.3d 422, 426 (2001) (internal quotation marks omitted). Here, Oceguera, the sole person to whom Spirtos allegedly made the accusation, stated in his affidavit that "I was sufficiently startled by Dr. Spirtos' statements . . . that I subsequently spoke with Mr. Yemenidjian about [them]." Thus, if we accept the undisputed proposition that Oceguera is a "reasonable person" who happens to have a relationship with both Spirtos and Yemenidjian, it is apparent that Oceguera inferred that Spirtos made the accusation with knowledge of factual support for the accusation. Accordingly, we conclude that Spirtos' alleged statement *was not* nonactionable opinion and that Spirtos' argument in this respect does not provide a basis for reversing the district court's order.

## CONCLUSION

Step one of the anti-SLAPP analysis requires a district court to "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a). Based on

NRS 41.660(3)(a)'s plain language, we conclude that a moving party's denial that he or she made the alleged statements has no relevance at step one of the anti-SLAPP evaluation. Consequently, the district court correctly assumed the accuracy of Yemenidjian's version of Spirtos' alleged defamatory statement for purposes of conducting the step-one evaluation. Although the district court erroneously concluded that the alleged version of Spirtos' statement was not "made in direct connection with an issue of public interest in a place open to the public or in a public forum," NRS 41.637(4), Spirtos failed to demonstrate that the alleged version of his statement was "a good faith communication," NRS 41.660(3)(a). Accordingly, the district court correctly denied Spirtos' anti-SLAPP motion to dismiss. Further, because we disagree with Spirtos' alternative argument that his alleged statement was a nonactionable opinion, we affirm the district court's order denying his motion. We decline to consider Spirtos' remaining arguments, as they are beyond the scope of the step-one anti-SLAPP analysis.

_____, C.J.
Hardesty

We concur:

_____, J.
Stiglich

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A