OPINION
By the Court, Hardesty, J.:
In this opinion, we define the term “employment” for purposes of the statutes regulating private employment agencies.[1] Because employment is service performed for wages, we conclude that an agent for a hotel stage show is not required to hold an employment agency license under the statutes.

FACTS AND PROCEDURAL HISTORY

Respondent Dean Sterling performs an x-rated comedy stage show under the name of “Dr. Naughty.” After one evening’s performance, Sterling met appellant Robert Whealon at a Las Vegas nightclub. Whealon and Sterling discussed the future of the Dr. Naughty show and entered into an oral contract whereby Whealon alleges that he agreed to be the show’s agent in exchange for twenty percent of the gross receipts less the casino and entertainment tax. Dean Sterling and respondent Mary Ellen Sterling (the Sterlings) dispute the agreement’s twenty percent fee term, contending that the agreement was for a twelve percent promoter’s fee based on the ticket sales, minus taxes, plus an agent fee of three percent.
Whealon thereafter found a new venue for the show, which resulted in a lounge lease agreement for the Sterlings. Under that agreement, the Sterlings paid the rent for the lounge space and pro *665 duced the show but otherwise operated as a separate entity. The hotel paid no wages to the Sterlings.
Although the Sterlings paid Whealon a fifteen percent fee between June and November 1999, Whealon brought suit against them for unpaid fees, seeking the difference between the twenty percent agent fee he asserts was due under the oral agreement and the fifteen percent fee he received. During the course of the proceedings, Whealon repeatedly claimed that he was the show’s agent but admitted that he had never applied for an employment agency license from the Nevada Labor Commissioner.[2]
In their initial answer and cross-complaint, the Sterlings failed to raise a violation of the private employment agencies statutes as an affirmative defense. They were later granted leave to file an amended answer and cross-complaint, which included an affirmative defense based on Whealon’s failure to secure an employment agency license under the statutes. Thereafter, the Sterlings moved for summary judgment.
Ultimately, the district court granted summary judgment to the Sterlings, finding that Whealon had violated the statutory licensing requirements for private employment agencies, thereby rendering the oral agreement unenforceable. Whealon appeals.

DISCUSSION

Amendment of answer and cross-complaint

Whealon first argues that the district court abused its discretion by granting the Sterlings’ motion to amend their pleadings to raise a previously omitted affirmative defense. We disagree.
A district court’s ruling on a motion to amend pleadings rests within the court’s sound discretion and will not be disturbed absent a showing of abuse of discretion.[3]
NRCP 8(c) requires that all affirmative defenses be raised in the pleadings, stating in pertinent part, “a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense.” An affirmative defense not raised in the pleadings is ordinarily deemed waived,[4] unless the opposing party is given *666 “reasonable notice and an opportunity to respond.”[5] Therefore, “an affirmative defense can be considered (if not pleaded) if fairness so dictates and prejudice will not follow.’ ’[6] The notice and opportunity to respond requirements may be satisfied if the opposing party is given time to file a response to a motion to amend the pleadings.[7] Once a responsive pleading is filed, a party may amend its pleading only with leave of the court.[8]
In- this case, Whealon was given the opportunity to respond to the Sterlings’ motion to amend the pleadings. Further, Whealon failed to demonstrate any prejudice resulting from the amendment. Accordingly, the district court did not abuse its discretion in permitting the Sterlings to amend their answer and cross-complaint to add the affirmative defense that the contract was void because of Whealon’s failure to comply with Nevada’s private employment agencies statutes.

Private employment agency licensing requirements

Whealon argues that it was error for the district court to grant summary judgment because the private employment agencies statutes are limited to employment resulting in the traditional employer-employee relationship and do not apply to independent contracts or leases. We agree.
This court reviews an order of summary judgment de novo.[9] Summary judgment is appropriate when a review of the record in the light most favorable to the nonmoving party extinguishes all issues of material fact.[10] “[T]he essential question on appeal is whether genuine issues of material fact were created by pleadings and proof offered.”[11]
Further, “ ‘[t]he construction of a statute is a question of law subject to de novo review.’ ”[12] The “words in a statute will gener *667 ally be given their plain meaning, unless such a reading violates the spirit of the act, and when a statute is clear on its face, courts may not go beyond the statute’s language to consider legislative intent.”[13] It is the duty of this court, when possible, to interpret provisions within a common statutory scheme “harmoniously with one another in accordance with the general purpose of those statutes” and to avoid unreasonable or absurd results, thereby giving effect to the Legislature’s intent.[14]
An employment agency is prohibited from conducting business in this state without a license.[15] NRS 611.020(2), part of the private employment agencies statutes, defines “employment agency” as a person who, for a charge, “[f]urnishes information to a person” seeking employment or employees. Although the statutes do not define the terms “employment” or “employ,” they do define “gross cash wage” from employment as wages and salary, commissions and other supplemental compensation, excluding tips and bonuses.[16]
Webster’s dictionary defines “employment” as “activity in which one engages or is employed,” “an instance of such activity,” or “the act of employing: the state of being employed.”[17] Various courts have accepted these definitions, adding that “[t]he term ‘employment’ connotes service or that which engages one’s time or attention.”[18] The definition of employment, particularly in the context of the private employment agencies statutes, necessarily requires the word “employ” to be defined. “Employ” is defined as “to use or engage the services of,” “to provide with a job that pays wages or a salary,” or “to devote to or direct toward a particular activity or person.”[19]
We conclude that, consistent with its plain meaning, the term “employment” applies to individuals who perform services in exchange for wages, salary or commissions. Other agreements arranged by an agent, such as an independent contract or a premises lease, are not covered by the private employment agencies statutes.
*668 Here, while the amount of compensation required under the oral agreement is disputed, there is no question that Whealon did not furnish information to persons seeking “employment” or employees but rather arranged an agreement by which the Sterlings were able to enter into a lease agreement with the hotel to rent space in which to perform the Dr. Naughty show. The Sterlings paid rent for the lounge space, and the hotel paid no wages, salary or commissions to the Sterlings.
Accordingly, Whealon’s actions under the oral agreement were not subject to the licensing requirements of Nevada’s private employment agencies statutes, and we reverse the order of the district court granting summary judgment and remand this matter for further proceedings.
Rose and Gibbons, JJ., concur.

NRS 611.020-611.320.

See NRS 611.030; NRS 611.070.

Pierce Lathing Co. v. ISEC, Inc., 114 Nev. 291, 296, 956 P.2d 93, 96 (1998).

Second Baptist Ch. v. First Nat’l Bank, 89 Nev. 217, 219-20, 510 P.2d 630, 631 (1973); Tobler & Oliver Constr. v. Nevada St. Bank, 89 Nev. 269, 271, 510 P.2d 1364, 1365 (1973).

Williams v. Cottonwood Cove Dev. Co., 96 Nev. 857, 860, 619 P.2d 1219, 1221 (1980).

Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 473, 705 P.2d 673, 675 (1985).

See Williams, 96 Nev. at 860-61, 619 P.2d at 1221.

Kantor v. Kantor, 116 Nev. 886, 891, 8 P.3d 825, 828 (2000).

United Nat’l Ins. Co. v. Frontier Ins. Co., 120 Nev. 678, 683, 99 P.3d 1153, 1156 (2004).

Id.

Yeager v. Harrah’s Club, Inc., 111 Nev. 830, 833, 897 P.2d 1093, 1094 (1995).

California Commercial v. Amedeo Vegas I, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003) (quoting County of Clark v. Upchurch, 114 Nev. 749, 753, 961 P.2d 754, 757 (1998)).

Pellegrini v. State, 117 Nev. 860, 873-74, 34 P.3d 519, 528 (2001).

Washington v. State, 117 Nev. 735, 739, 30 P.3d 1134, 1136 (2001).

NRS 611.030.

NRS 611.020(3).

Merriam-Webster’s Collegiate Dictionary 379 (10th ed. 1994).

State v. Roth, 44 N.E.2d 456, 458 (Ohio 1942), cited in Whitney v. State, Employment Security Dep’t, 105 Nev. 810, 815, 783 P.2d 459, 462 (1989) (Steffen, J., dissenting); Davis v. Lincoln County, 219 N.W. 899, 900 (Neb. 1928); Geneva-Pearl Oil & Gas Co. v. Hickman, 296 P. 954, 955 (Okla. 1931); Slocum Straw Works v. Industrial Commission, 286 N.W. 593, 597 (Wis. 1939).

Merriam-Webster’s Collegiate Dictionary 379 (10th ed. 1994).