MAXWELL, J.,
for the Court:
¶ 1. Mary Virginia O’Gwin died of natural causes. Yet her husband sued Isle of Capri-Natehez, Inc. (IOC),[1] for wrongful death. Mary Virginia was playing slots at IOC’s casino when her heart stopped. Her husband claims the casino breached its legal duty to its critically ill patron by not restarting her heart with a defibrillator or chest compressions within five minutes of her collapse.
¶ 2. The circuit court dismissed this claim on summary judgment. And on appeal, we must affirm. As an owner of property open to the public, IOC, once it learned its patron Mary Virginia was ill and in need of medical assistance, did owe her a duty to render aid. But this duty entailed taking reasonable action to give her first aid and care for her until the emergency medical technicians (EMTs) arrived.[2] This duty did not include performing EMT-level medical-rescue efforts, like using an automated external defibrillator (AED) or performing cardiopulmonary resuscitation (CPR). So evidence that IOC did not provide such medical assistance within minutes of learning Mary Virginia was ill is not evidence the casino breached its duty to render aid. Thus, IOC was entitled to summary judgment on the claim that its negligence caused Mary Virginia’s death.
Background

I. Heart Attack

¶ 3. Sixty-seven-year-old Mary Virginia sat down at a slot machine in IOC’s casino. Minutes later, her heart stopped. She collapsed to the floor. A patron found her and notified employees, who came to her aid. An ambulance was called. And while waiting for an ambulance to arrive, employees tried to revive her through CPR.
¶4. When the EMTs arrived, they shocked Mary Virginia’s heart with an AED. Her heart restarted. But by this point, her brain was fatally injured from lack of oxygen. After Mary Virginia spent *786 a week on artificial life support, her husband, Howard O’Gwin, took the doctors’ painful advice and ceased support. Mary Virginia was pronounced dead. Her death certificate listed the cause of death as cardiopulmonary arrest.

II. Wrongful-Death Suit

¶ 5. Howard, individually and as the representative of Mary Virginia’s wrongful-death beneficiaries, sued IOC. He claimed the casino’s negligence — not the heart attack — caused his wife’s death. He alleged the casino breached its duty to render aid by failing to timely start CPR and/or use an AED, which he insisted would have prevented her brain death and allowed her to survive.
¶ 6. In response to IOC’s motion for summary judgment, Howard submitted an unsigned report by a pathologist who believed Mary Virginia had just a six-minute window from the moment her heart stopped pumping blood to her brain to prevent irreversible brain damage. The pathologist had reviewed IOC security footage. While the video showed casino employees came to Mary Virginia’s aid within two minutes, it did not show employees trying to resuscitate her through CPR or an AED during that critical time frame. Nor did the EMTs arrive in this time window, due to the ten minutes it took from dispatch to when they reached Mary Virginia.[3] The pathologist concluded that Mary Virginia’s brain death resulted from the “prolonged elapse of time between her collapse and the initiation of CPR and use of the AED.”
¶7. The circuit judge granted IOC’s motion for summary judgment. Even accepting the expert opinion, the judge found Howard had failed to establish a negligence claim.[4] IOC had no duty to perform CPR or use an AED during the precious few minutes after Mary Virginia collapsed — particularly when its employees, who are not in the medical profession, had no idea why she collapsed. What is more, the judge found Mary Virginia suffered no injury at the IOC’s hand. What she died from was her heart attack, which IOC did not cause.
¶ 8. Howard timely appealed. On appeal, we review the grant of summary judgment de novo. Bradley v. Kelley Bros. Contractors, Inc., 117 So.3d 331, 336 *787 (¶ 21) (Miss.Ct.App.2013). We view all the evidence in the light most favorable to Howard, the nonmovant, and will affirm only if there are no genuine issues of material fact and IOC is entitled to a judgment as a matter of law. See id.
Discussion
¶ 9. Howard’s claim is one of negligence. And all negligence claims have four essential elements—(1) duty, (2) breach, (3) causation, and (4) injury. Gulledge v. Shaw, 880 So.2d 288, 292-93 (¶ 10) (Miss.2004). This case hinges on duty— specifically the duty to render aid.
¶ 10. The parties present the duty to render aid as either all or nothing. As Howard views it, there exists a duty for business owners to snap into roles of trained EMTs if they catch wind a patron is ailing. But IOC argues there exists no duty at all.
¶ 11. We disagree with both parties and find the actual duty for proprietors is more than rendering no aid whatsoever but far less than providing every potential means of medical assistance. The duty that exists is to take reasonable actions to render first aid and care for the patron until someone else is able to care for her. IOC indisputably fulfilled this duty by coming to Mary Virginia’s aid, calling an ambulance, and waiting with her until the ambulance arrived. For this reason, we affirm the grant of summary judgment in IOC’s favor.

I. Duty to Render Aid

¶ 12. Let us start by emphasizing that, in general, there is no duty to render aid. “[T]he fact that an actor realizes or should realize that action on his part is necessary for another’s aid or protection does not of itself impose upon him a duty to take such action.” Jones v. James Reeves Contractors, Inc., 701 So.2d 774, 784 (Miss.1997) (emphasis added) (quoting Restatement (2d) of Torts § 314 (1965)).
¶ 13. But a property owner who holds its property open to the public is in a special relationship with those who accept the invitation to come onto the property. And our supreme court has found this specific relationship prompts a specific duty. In Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416-17 (Miss.1988), the supreme court held that a “tavern keeper”—a business that sold alcohol to its patrons—owed its patron, who had been assaulted just outside its door, “an affirmative duty to aid [the injured patron] once [it] learned that she had been injured on [the] premises.” Twenty years later, the supreme court expounded on this duty. Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So.2d 364, 369 (¶ 17) (Miss.2008). In Spotlite Skating Rink, the court looked to section 314A of the Restatement (Second) of Torts, which “provides that an owner of land who holds it open to the public is under a duty to take reasonable action ‘to give invitees first aid after the owner knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.’ ” Spotlite Skating Rink, 988 So.2d at 369 (¶ 17) (quoting Restatement (2d) of Torts § 314A(1)(b) (1965)). According to the supreme court, “[t]his standard of care is consistent with [the court’s previous] holding in Gris-ham[.]” Id. (citing Grisham, 519 So.2d at 417).
¶ 14. So from Spotlite Skating Rink we learn four things about the duty to render aid. First, it applies not just to tavern keepers but also to any “proprietor,” or “owner of land who holds it open *788 to the public.”[5] Id. at 869 (¶ 17). Second, it requires only reasonable first aid. Third, it does not begin until the proprietor knows or should know that a patron is ill or injured and in need of assistance. And fourth, it ends when the care of the patron is assumed by someone else. To this last point we would add that the duty to aid would also end when a patron, who is competent to do so, refuses further aid. Estate of White v. Rainbow Casino-Vicksburg P’ship, 910 So.2d 713, 719 (¶ 18) (Miss.Ct.App.2005).

II. Actions Outside the Scope of Duty

¶ 15. Both Spotlite Skating Rink and Grisham involved allegations of no aid by the business owner to the injured patron. Spotlite Skating Rink, 988 So.2d at 370 (¶ 18); Grisham, 519 So.2d at 417 (property owner told assaulted patron it was “too tied up” to help). But here we have aid. Howard is not alleging IOC did nothing to help his wife. Instead, he claims what IOC did was too little, too late. Yet what Howard argues should have been done — and what his expert says is the only thing that could have been done to keep Mary Virginia’s heart attack from damaging her brain — is outside the scope of the duty to render aid.
¶ 16. According to Howard, the aid IOC rendered was unreasonable because it did not include restarting Mary Virginia’s heart by chest compressions or a defibrillator within six minutes of Mary Virginia’s collapse. But as a matter of law, such medical-rescue services are outside the scope of “reasonable ... first aid.” Spotlite Skating Rink, 988 So.2d at 369 (¶ 17). As the comment to section 314A states, “In the case of an ill or injured person, [a property owner] will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.” Restatement (2d) of Torts § 314A cmt. f. That is what the IOC employees did here. They tried to give Mary Virginia first aid. When they realized the severity of her condition, they called for an ambulance. And they cared for her until the EMTs arrived.
¶ 17. True, they did not perform CPR immediately or use an AED. But they were not under a legal duty to do so. While our supreme court has yet to explore the parameters of “first aid,” we find guidance in the rationale of other jurisdictions that have rejected claims that performing CPR or using an AED falls within reasonable “first aid.” E.g., L.A. Fitness *789 Int'l., LLC v. Mayer, 980 So.2d 550, 559 (Fla.Dist.Ct.App.2008) (holding section 314A’s obligation to give first aid did not impose duty on gym to perform CPR on patron who had suffered heart attack); Salte v. YMCA of Metro. Chicago Found., 351 Ill.App.3d 524, 286 Ill.Dec. 622, 814 N.E.2d 610, 614-15 (2004) (holding gym’s duty to render aid did not include having and using an AED). Cf. also Lee v. GNLV Corp., 117 Nev. 291, 22 P.3d 209, 213-14 (2001) (holding duty to take reasonable steps to render first aid did not include performing “Heimlich maneuver” on restaurant patron who was choking).
¶ 18. “First aid requires no more assistance than that which can be provided by an untrained person.” L.A. Fitness Int’l, 980 So.2d at 559. By contrast, CPR, though “relatively simple and widely known as a major technique for saving lives, ... nonetheless requires training and re-certification.” Id. So “[ujnlike first responders, for whom performing CPR is routine, non-medical employees certified in CPR remain laymen and should have discretion in deciding when to utilize the procedure.” Id. The same is true for using a debifrillator, which requires medical training to know, first, that an AED is needed and, second, how to properly use it. See Salte, 286 Ill.Dec. 622, 814 N.E.2d at 614-15.
¶ 19. In concluding that Howard’s allegations cannot support a claim for failure to render aid, we find instructive Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173 (3d Cir.1994), involving another heart attack in a casino with very similar facts. In Lundy, the casino had been sued for failing to provide equipment and capable medical personnel to intubate a heart-attack victim before paramedics arrived. In affirming the grant of summary judgment to the casino, the United States Court of Appeals for the Third Circuit held that “[pjerforming an intubation goes far beyond any ‘first aid’ contemplated by [section] 314A.” Id. at 1179. As the Third Circuit saw it, “Clearly, the duty recognized in [section] 314A does not extend to providing all medical care that the [property owner] could reasonably foresee might be needed by a patron.” Id. See also Salte, 286 Ill.Dec. 622, 814 N.E.2d at 615 (holding that section 314A does “not require [the] defendant to provide, or to be prepared to provide, all medical care that it could reasonably foresee might be needed by a patron”).
¶ 20. In our case, what Howard is really asserting is that IOC employees failed to quickly diagnose that Mary Virginia’s heart had stopped and further failed to immediately and successfully restart her heart by CPR or a defibrillator. But the duty to render aid does not saddle business owners with a duty to provide all medical services reasonably foreseeable as necessary for a patron. See Lundy, 34 F.3d at 1179; Salte, 286 Ill.Dec. 622, 814 N.E.2d at 615. The duty to render aid is much narrower. Businesses like IOC are only required to give reasonable first aid if they know or have reason to know a patron is ill or injured, and to care for the patron until he or she can be cared for by others, here the paramedics. Spotlite Skating Rink, 988 So.2d at 369 (¶ 17); see also Estate of White, 910 So.2d at 719 (¶ 18) (finding a casino fulfilled the duty stated in section 314A by giving first aid to an injured patron “until she insisted on leaving the casino and effectively surrendered her care to her own discretion and to the judgment of her husband”).
¶ 21. Just as in Estate of White, which also involved a casino patron’s death, we do not “stretch the duty of [IOC], and other landowners and business operators, to include a duty which our supreme court and Legislature have not deemed proper *790 to establish.” Estate of White, 910 So.2d at 719 (¶ 19). Because Howard offered no evidence the casino failed to perform the only relevant duty recognized by our supreme court — the duty to render reasonable first aid — we must affirm summary judgment in IOC’s favor. See Spotlite Skating Rink, 988 So.2d at 369 (¶ 17).
¶ 22. THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ, BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. The actual name of the casino operator is IOC-Natchez, Inc., not Isle of Capri-Natchez, Inc.

. See Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes, 988 So.2d 364, 369 (¶ 17) (Miss.2008) (citing Restatement (2d) of Torts § 314A(1)(b), (3) (1965)).

. There is a discrepancy in the pathologist’s report about how many minutes lapsed between IOC employees coming to Mary Virginia's aid and calling an ambulance. But the report relied on the ambulance service's records, which showed it took ten minutes from being called to make it to Maty Virginia. So even if the ambulance had been called at the earliest possible moment, in the expert's own estimation, the EMTs would not have arrived in time to prevent Maty Virginia's brain damage.

. One of the errors Howard asserts on appeal is that the circuit judge improperly ruled the expert pathologist's report was not credible, which suggests the judge struck the report or refused to consider it when ruling on IOC’s motion. But the judge made a point to say that, for purposes of summary judgment, she accepted the expert report, even though unsigned. What the judge did not accept is Howard's legal argument that IOC owed Mary Virginia the duty to perform the medical services the expert said were necessary.
True enough, the judge went on to question the expert’s opinion on proximate causation, expressing her own disbelief "that the expert can say if they had gotten there sooner that this lady would have survived.” But at that point, the judge had already granted the motion based on Howard's failure to establish IOC had a duty to perform CPR or use an AED. So the judge's weighing in on the expert's credibility when it came to proximate causation and injury did not bear on her ruling. Because we affirm summary judgment based on the same lack of duty, we do not address Howard’s claim that the judge improperly found this portion of the expert's opinion was not credible.

. For purposes of premises liability, Mississippi divides those injured on another's property into three groups: (1) trespassers, (2) licensees, and (3) business invitees. And Mississippi defines "business invitee” as "a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Corley v. Evans, 835 So.2d 30, 37 (¶ 21) (Miss.2003) (quoting Hoffman v. Planters Gin Co., 358 So.2d 1008, 1011 (Miss.1978)).
The Restatement (Second) of Torts further divides business invitees into two categories. The first category "includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public.” Restatement (2d) of Torts § 332(3) cmt. e(1965). The second category "includes those who come upon land not open to the public[J” Id. (emphasis added).
By stating that the duty to render aid applies to "[a] possessor of land who holds it open to the public," the Restatement clearly has in mind that only the first category of business invitees — those "invited to come upon the land for a purpose connected with the business for which the land is held open to the public” — are owed the duty to render aid. Restatement (2d) of Torts § 314A(3).