An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CHARLESTON STATION, LLC, D/B/A RED ROCK RESORT SPA CASINO, A NEVADA CORPORATION, Appellant, vs. LARRY STEPHENS AND JUELNITA STEPHENS, HUSBAND AND WIFE, Respondents. | No. 63943 |

**FILED**

DEC 2 3 2015



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment pursuant to a jury verdict in a tort action and post-judgment orders denying a new trial and awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

Respondent Larry Stephens had a heart attack while at appellant Charleston Station's casino, Red Rock Station. After Stephens collapsed, security officer Joseph Franco was called to the scene. Franco checked Stephen's condition and called Red Rock's dispatch center with instructions to call 9-1-1. While waiting for paramedics, Franco did not perform CPR or use an automated external defibrillator (AED). Paramedics arrived on the scene approximately six minutes after Stephens collapsed. Stephens was taken to the hospital and ultimately survived but suffered anoxic brain injuries. Although Stephens acknowledges that quick emergency medical care saved his life, he maintains that Charleston Station's employees' failure to provide CPR or defibrillation during the six-minute "golden window" caused his brain injuries.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-39536

Stephens sued Charleston Station for negligence. After a jury trial, Stephens and his wife were awarded $1,605,000. Charleston Station then unsuccessfully moved for a new trial, remittitur, or judgment as a matter of law, and the district court entered judgment in accordance with the jury's verdict. This appeal followed.

*Charleston Station is not entitled to a judgment as a matter of law or a new trial*

Charleston Station argues that it is entitled to either a judgment as a matter of law or a new trial based upon (1) our holding in *Lee v. GNLV Corp.*, 117 Nev. 291, 22 P.3d 209 (2001), and (2) NRS 41.500, the so-called "good samaritan statute." We review a district court's denial of a judgment as a matter of law motion de novo, and a district court's denial of a new trial motion for an abuse of discretion. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007).

> *Charleston Station is not entitled to a judgment as a matter of law or a new trial based upon our holding in Lee*

To succeed with a claim of negligence, a plaintiff must satisfy four independent elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 124 Nev. 213, 217, 180 P.3d 1172, 1175 (2008). The first element, duty, is a question of law which is "solely to be determined by the court." *Lee*, 117 Nev. at 295, 22 P.3d at 212. The second element, breach, requires deciding "[w]hether a defendant's conduct was 'reasonable' under a given set of facts." *Id.* at 296, 22 P.3d at 212. Breach is a question of fact which is "usually an issue for the jury to decide." *Id.*; *see also K-Mart Corp. v. Washington*, 109 Nev. 1180, 1189, 866 P.2d 274, 280-81 (1993) ("The reasonableness of [a defendant's] actions [is] a factual determination that the jurors could make based upon all the evidence presented at trial."), *receded from on other grounds by Pope v. Motel 6*, 121 Nev. 307, 114 P.3d 277 (2005). However, while breach is usually a question of fact for the

jury to decide, "in some clear cases," the reasonableness of the defendant's actions can be "properly decided by the court." *Lee*, 117 Nev. at 296, 22 P.3d at 212.

In *Lee*, an intoxicated patron was eating a meal at a restaurant owned by GNLV. *Id.* at 293, 22 P.3d at 210. During the meal, the patron vomited in his lap, slumped over in his chair, and closed his eyes. *Id.* Security officers arrived within 60 seconds and took the patron's pulse. *Id.* At first, the patron's pulse was "strong." *Id.* However, his pulse began to fade, and security officers requested that paramedics be summoned. *Id.* at 293, 22 P.3d at 211. While waiting for paramedics, the security officers obtained supplemental oxygen and began CPR procedures. *Id.* The patron was subsequently taken to the hospital where he was pronounced dead. *Id.* at 293-94, 22 P.3d at 211. An autopsy revealed that the patron had choked to death when food became lodged in his airway. *Id.* at 294, 22 P.3d at 211. The doctor who performed the autopsy later testified that he was doubtful that even an immediate Heimlich maneuver would have saved the patron's life. *Id.* Following the patron's death, his wife filed a negligence lawsuit against GNLV. *Id.* GNLV moved for summary judgment arguing that its employees had acted reasonably under the circumstances. *Id.* The district court granted GNLV's motion. *Id.*

On appeal, this court first considered whether GNLV owed the patron a duty of care. We concluded that a special relationship existed between GNLV and the patron; and thus, "GNLV's employees were under a legal duty to come to the aid of [the patron]." *Id.* at 296, 22 P.3d at 212. We explained that this duty required GNLV's employees to "take reasonable affirmative steps to aid the party in peril." *Id.* at 297, 22 P.3d at 213 (internal quotation omitted). Thus, we concluded that GNLV did not have a specific duty to do the Heimlich maneuver; instead, it had a

general duty of reasonable care. *Id.* at 298-99, 22 P.3d 214. We next considered whether GNLV breached its duty by acting unreasonably under the circumstances. We concluded that by quickly responding to the situation, continually monitoring the patron's condition, and summoning professional medical assistance, GNLV's employees "acted reasonably as a matter of law." *Id.* at 298-99, 22 P.3d at 214. Thus, because GNLV did not breach its duty of care, i.e. to act reasonably, we concluded that the district court did not err in granting summary judgment. *Id.*

Charleston Station argues that based on our holding in *Lee*, it was under no *duty* to do anything other than summon paramedics after Stephens collapsed. Charleston Station's argument, however, confuses the independent negligence elements of duty and breach.

*Duty of care*

In *Lee*, we held that GNLV's employees had a duty to "take reasonable affirmative steps to aid the party in peril." *Id.* at 297, 22 P.3d at 213 (internal quotation omitted). Just as we explicitly did not impose a specific, bright-line *duty* to perform the Heimlich maneuver, *Id.* at 299, 22 P.3d 214, we also did not state that GNLV merely had a *duty* to call paramedics. Instead, we simply held that GNLV had an affirmative duty to act reasonably under the circumstances. *Id. See also* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 40 Reporter's note to cmt. d (2012) (citing *Lee* with evident approval and describing it as "characterizing the *duty* owed by a restaurant to a patron who was choking on food as one of *reasonable care under the circumstances*) (emphasis added).

Our discussion in *Lee* regarding duty is consistent with the most recent Restatement. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 40(a) (2012) ("An actor in a special relationship with another owes the other *a duty of reasonable care* with

regard to risks that arise within the scope of the relationship.") (Emphasis added). Comment *d* to this section recognizes that under the 1965 version of the Restatement, an affirmative duty "was limited to providing first aid and temporary care to ill or injured persons until appropriate medical care could be obtained." *Id.* However, comment *d* goes on to explain that the 2012 version of the Restatement "adopts a more general duty of reasonable care, thereby recognizing both the variety of situations in which the duty may arise and *advancements in medical technology that may enable an actor to provide more than just first aid.*"[1] *Id.* (emphasis added). In other words, "the duty imposed requires only reasonable care" in light of all of the circumstances presented.[2] *Id.* (emphasis omitted). In

---

[1]The crux of the dissent's argument—that Charleston Station's only *duty* was to administer basic first aid and summon paramedics—stems from a 50 year-old version of the Restatement. Restatement (Second) of Torts § 314A (1965). As the 2012 version of the Restatement points out, applying a general duty of reasonable care, instead of a specific duty to administer basic first aid and call paramedics, is more appropriate given advances in medical technology and the variety of factual scenarios negligence cases present. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 40 cmt. d (2012).

[2]The dissent contends that we have no case law to support our conclusion that Charleston Station owed Stephens a normal duty of reasonable care. However, this conclusion comes from the explicit language of our holding in *Lee*. *See* 117 Nev. at 297, 22 P.3d at 213 (concluding that GNLV's *duty* was to "take *reasonable* affirmative steps to aid the party in peril") (emphasis added) (internal quotations omitted). Like Charleston Station, the dissent confuses the independent negligence elements of duty and breach. Nowhere in *Lee* did we discuss a "limited-duty rule," nor did we hold that GNLV's only *duty* was to call paramedics. Instead, we held that GNLV had an affirmative *duty* of normal reasonable care, and given the unique facts presented in *Lee*, GNLV did not *breach* its duty of normal reasonable care. *Id.* at 297-99, 22 P.3d at 213-14.

*continued on next page . . .*

*. . . continued*

The dissent cites cases from other jurisdictions, in which courts rejected arguments that defendants like Charleston Station have a specific *duty* to have and use AEDs. Indeed, these courts are correct in rejecting a specific, bright-line *duty* to have and use AEDs. Adopting such a specific *duty* would mean that defendants are automatically negligent if they fail to have and use AED's. A rule of this nature would eviscerate the fact-finders' ability to evaluate the unique facts of each case to determine whether the defendant acted reasonably under the circumstances. However, contrary to the dissent's assertions, our holding in the present case is consistent with this principle—that courts should not impose specific, bright-line duties. We are not adopting a rule that defendants like Charleston Station have a specific *duty* to have and use AED's. Instead, we are reaffirming our holding in *Lee* in concluding that Charleston Station's *duty* was one of general reasonable care. Whether Charleston Station acted reasonably is a question of *breach*, and is for the jury to decide after considering all of the evidence presented at trial.

It appears that the dissent would have this court depart from *Lee*'s duty of reasonable care standard, and adopt a rule that defendants like Charleston Station *never* have a *duty* to do anything other than administer basic first aid and call paramedics when a patron is in peril. However, the specific, bright-line *duty* urged by the dissent is equally as dangerous as the one the dissent incorrectly accuses us of adopting. Holding that defendants like Charleston Station *never* have a *duty* to do anything other than administer basic first aid and call paramedics would eviscerate the fact-finders' ability to evaluate the unique facts of each case to determine whether the defendant acted reasonably under the circumstances. *See Verdugo v. Target Corp.*, 327 P.3d 774, 789 (Cal. 2014) (cited by the dissent and concluding that while it was rejecting the argument that a retailer had a specific, bright-line *duty* to have AEDs, the court was not addressing whether the retailer could *breach* its duty of reasonably care by failing to do more than summon paramedics). Accordingly, we conclude that Charleston Station owed Stephens a general *duty* of reasonable care, and whether Charleston Station *breached* that duty is a question of fact for the jury to decide.

the present case, the jury was properly instructed that Charleston Station owed the same general duty of care to Stephens.[3]

*Breach of duty*

Our discussion in *Lee* regarding the security personnel's actions after responding to the choking patron involved the *breach* element of negligence, not duty. In other words, we considered whether GNLV's employees acted reasonably under the circumstances. We ultimately held that under the unique facts in *Lee*, it was clear that GNLV did not breach its duty to the choking patron because its employees acted reasonably under the circumstances. However, our holding was limited to the facts of that case. *Id.* at 299, 22 P.3d at 214 ("under the *circumstances presented in this case*, GNLV's employees acted reasonably as a matter of law" (emphasis added)). We did not create a rule that defendants in all cases act reasonably, as a matter of law, when they summon paramedics.

The facts of the current case are different than those in *Lee*. For example, in the almost twenty years since the incident in *Lee* occurred, there have been advances in medical technology which could affect the reasonableness analysis. Evidence was presented at trial that Charleston Station trains its employees on how to use modern AED devices that can minimize the damage caused by a heart attack. Further, unlike in *Lee*, where security personnel acted reasonably by performing

---

[3]Jury Instruction No. 24 stated:

> A special relationship exists between the Red Rock and its patrons. When a special relationship exists, a party who is in control of the premises is required to take reasonable affirmative steps to aid a party in peril, such as a party who has become ill or is otherwise in need of medical attention.

 

CPR on the choking patron, Charleston Station security did nothing of significance to aid Stephens other than calling paramedics.

Except in rare cases where the reasonableness of the defendant's actions is clear, determining whether a defendant acted reasonably is a question of fact for the jury to decide. *Id.* at 296, 22 P.3d at 212. We conclude that the facts of this case are not clear enough to decide the issue of reasonableness as a matter of law. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 8(b) (2010) ("When, in light of all the facts relating to the actor's conduct, reasonable minds can differ as to whether the conduct lacks reasonable care, it is the function of the jury to make that determination."). This case was submitted to a competent jury which, after hearing all of the evidence presented at trial, found that Charleston Station acted unreasonably under the circumstances. We must give significant deference to the jury's findings.[4] *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013)

---

[4]As to duty, we are not creating a rule that all defendants like Charleston Station have a duty to perform CPR or use an AED if one is available. Instead, we are simply holding that Charleston Station had an affirmative duty to act reasonably under the circumstances. As to breach, we are not creating a rule that defendants in all cases act unreasonably if they fail to perform CPR or use an AED in an emergency. Instead, we are simply reaffirming the basic principle of tort law that "[t]he reasonableness of [a defendant's] actions [is] a factual determination that the jurors could make based upon all the evidence presented at trial," including the fact that Charleston Station's employees were trained in CPR and had an AED at their disposal. *K-Mart*, 109 Nev. at 1189, 866 P.2d at 280-81. Hypothetically, there could still be situations in which a business does not perform CPR or use an AED in an emergency, but is still found by a jury to have acted reasonably based upon the unique circumstances presented in that case.

("[A]lthough under de novo review we do not defer to the district court's decision to deny [a motion for a judgment as a matter of law], we give significant deference to the jury's verdict and to the nonmoving parties . . . when deciding whether that decision was correct."). Accordingly, we conclude that Charleston Station was not entitled to a judgment as a matter of law or a new trial based upon our holding in *Lee*.[5]

*Charleston Station is not entitled to a judgment as a matter of law or a new trial based upon NRS 41.500*

As an initial matter, Stephens argues that Red Rock waived its immunity arguments because it did not assert NRS 41.500 as an affirmative defense in its answer or pre-trial memorandum. Although Stephens is correct that "[a]n affirmative defense not pleaded in the answer is waived," *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 987, 103 P.3d 8, 18 (2004), an affirmative defense can nevertheless be

---

[5]Charleston Station argues that affirming the judgment in this case will be detrimental to public policy, because it will discourage businesses from training their employees in the use of CPR and AEDs. Charleston Station further argues that businesses will be discouraged from having AEDs at all. We disagree. There are advances in medical technology every year. Employees trained in the use of CPR and AEDs can utilize these life saving techniques and devices in emergencies. The fact that Charleston Station's employees were trained in CPR and had an AED at their disposal was a material fact for the jury to consider along with all of the other facts presented at trial. *See* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 40(a) cmt. d (2012) (finders of fact can consider that "advancements in medical technology . . . may enable an actor to provide more than just first aid."). We conclude that if anything, this case will have the effect of encouraging businesses to use these life saving techniques and devices in emergencies. Indeed, businesses should not be discouraged from having and using AEDs, because if they actually use these devices in emergencies, they will be shielded from liability under Nevada's good samaritan statutes. NRS 41.500(8)-(9).

considered "if fairness so dictates and prejudice will not follow." *Whealon v. Sterling,* 121 Nev. 662, 666, 119 P.3d 1241, 1244 (2005) (internal quotation omitted); *see also Kleinknecht v. Gettysburg Coll.,* 989 F.2d 1360, 1373 (3d Cir. 1993) (holding that the defendant did not waive the good samaritan defense where it asserted immunity in its motion for summary judgment). We conclude that Charleston Station did not waive the defense because it argued NRS 41.500 immunity in numerous motions and hearings, thereby giving Stephens notice and the opportunity to respond. *Whealon,* 121 Nev. at 666, 119 P.3d at 1244. Moreover, in light of the fact that Stephens waited until the last day of trial to object to Charleston Station's good samaritan defense, Stephens cannot demonstrate that he was prejudiced by Charleston Station's failure to assert NRS 41.500 as an affirmative defense.

Although Charleston Station did not waive its NRS 41.500 defense, we conclude that its NRS 41.500 arguments still fail on the merits. NRS 41.500(1) reads, in relevant part:

> "any person . . . *who renders* emergency care or assistance in an emergency, gratuitously and in good faith, . . . is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by that person in rendering the emergency care or assistance or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured person.

(Emphasis added). In *Sims v. Gen. Tel. & Electronics,* this court concluded that "gratuitously and in good faith" means "situations in which the rescuer was not already under a duty to act." 107 Nev. 516, 526, 815 P.2d 151, 157 (1991), *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co.,* 113 Nev. 1349, 951 P.2d 1027 (1997), *overruled on other*

*grounds by Richards v. Republic Silver State Disposal, Inc.*, 122 Nev. 1213, 148 P.3d 684 (2006). After our decision in *Sims*, NRS 41.500 was amended to define "gratuitously" to mean "that the person receiving care or assistance is not required or expected to pay any compensation or other remuneration for receiving the care or assistance." 1999 Nev. Stats. 936, S.B. 453, 70th Leg., at 936 (Nev. 1999).

However, two years after NRS 41.500 was amended, this court considered the applicability of the amended version to cases where the defendant had a preexisting duty to act. *See Lee*, 117 Nev. at 298 n.3, 22 P.3d at 213 n.3. In *Lee*, we concluded in dictum that despite NRS 41.500's new definition of "gratuitously," the *Sims*' preexisting duty rule still applied to NRS 41.500(1). *Id.* In reaching this conclusion, we stated the following:

> Notably, the Nevada Legislature has also enacted a statute that encourages rendering first aid. Thus, in Nevada, one "who renders emergency care or assistance in an emergency, gratuitously and in good faith, is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence." NRS 41.500(1). However, this statute does not apply to this case. *See Sims*, 107 Nev. at 526, 815 P.2d at 157.

117 Nev. at 298 n.3, 22 P.3d at 213 n.3.

Like in *Lee*, which was decided after NRS 41.500 was amended, we again conclude that the protections in NRS 41.500(1) do not apply when the defendant had a preexisting duty to help the plaintiff. Accordingly, because Charleston Station was under a duty to "take reasonable affirmative steps to aid" Stephens, *Lee*, 117 Nev. at 297, 22 P.3d at 213 (internal quotation omitted), NRS 41.500 is not applicable to

this case.[6] Accordingly, we[7]

ORDER the judgment of the district court AFFIRMED.[8]



_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

cc:  Hon. Jerry A. Wiese, District Judge
Ara H. Shirinian, Settlement Judge
Pyatt Silvestri & Hanlon
Lemons, Grundy & Eisenberg
Law Office of Daniel Marks
Goldberg & Osborne
Eighth District Court Clerk

---

[6]Because NRS 41.500 is inapplicable to this case, we conclude that the district court did not err in rejecting Charleston Station's proposed jury instructions relating to NRS 41.500.

[7]We have considered the parties' remaining arguments and conclude that they are without merit.

[8]Oral argument in this case took place before a three-member panel. The case was subsequently transferred to the En Banc Court.

PICKERING, J., with whom HARDESTY, C.J., and DOUGLAS, J., agree, dissenting:

The majority upholds the $1.6 million judgment against the Red Rock Resort and Casino, deeming the reasonableness of its response to Stephens's medical emergency a fact question for the jury, not a legal question for the court. I respectfully disagree. The Nevada Legislature and this court have previously addressed the liability of business owners to customers who, through no fault of the business owner, suffer a medical emergency on premises. While the business owner cannot ignore the emergency and must provide basic aid and summon professional medical help, this duty does not require the business to have its non-medical, lay employees administer CPR or attempt to use an AED, assuming one is available. A contrary rule—holding a business liable for having AEDs on site and training employees in CPR—would discourage businesses from voluntarily adopting these prophylactic, potentially life-saving measures, since it would penalize them with the risk of unwanted liability for the acts and omissions of their lay employees in responding to medical crises. On the uncontested facts, the district court could and should have granted judgment as a matter of law in favor of Red Rock. In not correcting the district court's legal error, the majority deviates from Nevada statutory and case law and announces a rule that no other court in the United States has endorsed.

I.

Larry Stephens suffered a heart attack minutes after he and his wife and their friends entered the Red Rock Resort and Casino. A Red Rock dispatcher immediately summoned an ambulance. Thanks to Red Rock's direct line to the local ambulance services, and its staff who

directed the ambulance to the proper entrance, trained paramedics arrived at Stephens's side within six minutes of his collapse. A 27-year-old Red Rock security guard, Franco, attended to Stephens until the paramedics arrived, while Stephens's wife and friends looked on. Franco first tried to obtain a response from Stephens, then placed a hand on his chest to determine if Stephens was breathing, and finally rolled Stephens onto his side so as to reduce the risk of airway obstruction or choking. Believing Stephens was breathing, Franco did not attempt CPR; nor did he call for one of five automated external defibrillators (AED) on premises to be brought and used. The first paramedic to arrive did not perform CPR or use an AED on Stephens either. The second paramedic to arrive started CPR. Stephens lived, but suffered anoxic brain injuries, for which he sued Red Rock, recovering a $1.6 million judgment for Red Rock's negligence. Stephens concedes that Red Rock did not cause his heart attack and that its prompt response to his medical crisis saved his life. His theory was and is that Red Rock acted negligently because its employees did not attempt CPR or use an AED on Stephens before the paramedics arrived.

## II.

### A.

"In Nevada, as under the common law, strangers are generally under no duty to aid those in peril." *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001). The relationship between a business proprietor and its patrons justifies an exception to this general no-duty rule, but the exception is limited to providing basic first aid and summoning expert medical assistance to a patron in need. *Id.* at 298-99, 22 P.3d at 213-14; *see* Restatement (Second) of Torts § 314A (1965). Thus, in *Lee*, this court affirmed the district court's grant of summary judgment

in favor of the Golden Nugget in a case in which an inebriated restaurant patron choked on food and died. 117 Nev. at 299, 22 P.3d at 214. In *Lee*, as here, the resort attended to its patron, Sturms, and immediately summoned an ambulance; it did not perform the Heimlich maneuver to clear Sturms's airway, however, an omission his widow alleged amounted to negligence. *Id.* at 293-94, 22 P.3d at 210-11. While recognizing that "'reasonableness' is usually an issue for the jury," we held that, "in some clear cases, the nature and extent of the defendant's duty is properly decided by the court," *id.* at 296, 22 P.3d at 212, and that "GNLV's employees acted reasonably *as a matter of law* by rendering medical assistance to Sturms[1] and summoning professional medical aid within a reasonable time." *Id.* at 299, 22 P.3d at 214 (emphasis added). In so holding, we rejected the argument that Golden Nugget's duty required it to do more than provide basic aid and summon professional medical help: "In this case, GNLV's employees were under no legal duty to administer the Heimlich maneuver to Sturms." *Id.*

Our 2001 holding in *Lee* is not, as the majority suggests, outdated or unusually fact-specific. It is mainstream law. *See, e.g.,* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 40 cmt. d (2012) (noting that, "an individual with an incipient heart attack

---

[1]The majority would distinguish *Lee* on the basis that the Golden Nugget's employees attempted CPR on Sturms while the Red Rock's Franco did not attempt CPR on Stephens. This distinction is legally meaningless: Sturms was not having a cardiac episode; he was choking on food. The attempt at CPR for Sturms was irrelevant to him as the Heimlich maneuver would have been to Stephens. The relevant first aid was checking Sturms's pulse and laying him on the floor, similar to the aid Franco provided Stephens.

does not impose the burden of paying for necessary medical care on a hotel by checking into the hotel. In the case of illnesses, actors will frequently satisfy their duty by ascertaining that no emergency requiring immediate attention exists and by summoning appropriate medical care."); *id.* Reporter's Note to cmt. d (citing *Lee* with evident approval and describing it as "characterizing the duty owed by a restaurant to a patron who was choking on food as one of reasonable care under the circumstances, but holding that restaurant was not negligent as a matter of law for not employing Heimlich maneuver").

*Lee*'s limited-duty rule applies not only to the use of the Heimlich maneuver on choking diners, but also to the use of AEDs and performance of CPR on patrons who suffer heart attacks while visiting a business. As the California Supreme Court noted just last year in *Verdugo v. Target Corp.*, 327 P.3d 774, 794 (2014), "to date *every* state appellate court that has confronted the legal question that is before us in this case—namely whether a business's *common law* duty to assist patrons who become ill on the business's premises includes a duty to acquire and make available an AED—has concluded that the business's common law duty does *not* impose such an obligation." (Emphases in original.) To similar effect is *L.A. Fitness International, LLC v. Mayer*, 980 So. 2d 550, 558-559 (Fla. Dist. Ct. App. 2008), where the Florida District Court of Appeal held that an athletic club's employees were under no legal duty to administer CPR to the club's patrons because CPR "is more than mere first aid." *Id.* at 559, 561. Further, the court held that the athletic club did not have a duty to keep an AED on its premises and use it on the plaintiff patron who died as a result of cardiac arrest. *Id.* at 561-62. And, in a case factually indistinguishable from this one, the

Mississippi Court of Appeals affirmed summary judgment in favor of a casino where there was "no evidence the casino failed to perform the *only* relevant duty recognized by [Mississippi's] supreme court—the duty to render reasonable first aid"—despite that the resort casino employees did not perform CPR or use a defibrillator on a stricken patron who suffered a heart attack. *O'Gwin v. Isle of Capri–Natchez, Inc.*, 139 So. 3d 783, 789-90 (Miss. Ct. App. 2014); *see also Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1179 (3d Cir. 1994) (holding that a casino's duty to take reasonable steps to render first aid "does not extend to providing all medical care that the carrier or innkeeper could reasonably foresee might be needed by a patron").

With no case law to support its holding, the majority invokes section 40 of the Restatement (Third) of Torts, specifically, comment d's reference to "advancements in medical technology that may enable an actor to provide more than just first aid." But as the Reporter's Notes to comment d emphasize, this reference directs readers to the 2004 Federal Aviation Authority regulation requiring airlines to carry defibrillators aboard aircraft with flight attendants, 14 C.F.R. § 121.803—a duty imposed by regulation in an environment where, because planes cannot land the minute a medical emergency arises, immediate medical assistance cannot be summoned. *See* Matthew L. Wald, Saving Lives in the Sky, N.Y. Times May 2, 2004, § 5, at 2, cited in Restatement (Third) of Torts, § 40 cmt. d Reporter's Notes. The Restatement's reliance on an FAA regulation underscores the policy choices involved: If a business is to be required, on penalty of liability in tort, to provide customers advanced medical assistance, specific regulations or statutes imposing that obligation should exist, enacted with notice to those affected and with due

SUPREME COURT
OF
NEVADA

(O) 1947A

5

consideration to cost, benefit, risk, and effectiveness. Here, in Nevada, the Legislature has required placement of AEDs in only very limited circumstances, not including ordinary businesses or hotels like the Red Rock. *See* NRS 450B.600 (requiring AEDs in certain government buildings); NRS 450B.620 (authorizing their acquisition in schools, medical facilities and health clubs). And, in an effort to encourage voluntary acquisition of AEDs, the Legislature has added a provision to Nevada's good Samaritan statute, NRS 41.500(9), providing that, "A business or organization that has placed an automated external defibrillator for use on its premises is not liable for any civil damages as a result of any act *or omission*, not amounting to gross negligence, by the person rendering such care" provided certain criteria are met) (emphasis added); *see also* NRS 41.500(6) (similarly immunizing "acts *or omissions*" by persons trained in CPR) (emphasis added).

Neither the common law nor our Nevada statutes support the proposition that a lay employee, such as the 27-year-old security guard, Franco, exposes a business to liability in tort where, as here, he promptly summons emergency medical aid and provides basic first aid while awaiting their arrival. If liability is to attach in these circumstances, owing to the business's voluntary acquisition of AEDs and basic CPR training of certain personnel, that choice is for the Legislature, not this court.

### B.

The majority also fails to come to terms with Nevada's good Samaritan statute, NRS 41.500, which, at minimum, requires reversal and remand for a new trial before a properly instructed jury. With certain exceptions not relevant here, NRS 41.500(1) provides that,

> any person in this State who renders emergency care or assistance in an emergency, gratuitously and in good faith, . . . is not liable for any civil damages as a result of any act or omission, not amounting to gross negligence, by that person in rendering the emergency care or assistance or as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured person.

An earlier version of this statute left "gratuitously" undefined, a gap this court filled in *Sims v. General Telephone & Electric*, where we defined "gratuitously" to mean "situations in which the rescuer was not already under a duty to act." 107 Nev. 516, 526, 815 P.2d 151, 157 (1991), *overruled on other grounds by Tucker v. Action Equip. & Scaffold Co.*, 113 Nev. 1349, 951 P.2d 1027 (1997). But in 1999, the Nevada Legislature amended NRS 41.500 to give a *legislative* definition of "gratuitously" much narrower than ours in *Sims*. 1999 Nev. Stat., ch. 194, § 1, at 936.[2] Today, NRS 41.500(10) declares that, as used in NRS 41.500, "gratuitously" simply "means that the person receiving care or assistance is not required or expected to pay any compensation or other remuneration for receiving the care or assistance."[3]

---

[2]*Lee* cites *Sims* as a basis for rejecting the application of NRS 41.500. 117 Nev. at 297 n.3, 22 P.3d at 213 n.3. Of note, the events giving rise to the incident in *Lee* predated the 1999 amendment that added subparagraph 10 to NRS 41.500 and, from what appears in *Lee*, NRS 41.500(10) was neither argued nor addressed.

[3]Of note, the 1999 Legislature not only amended NRS 41.500 to add a narrower definition of "gratuitously," but also added the provisions specifically protecting persons who acquire and use AEDs or undertake CPR training from liability. *See* 1999 Nev. Stat., ch. 194, § 1, at 936.

The jury in this case was given special interrogatories asking whether it "utilized" negligence or gross negligence in arriving at its verdict. It answered "yes" to negligence and "no" to gross negligence. These answers do not make clear whether it found no gross negligence, or that it didn't reach the question of gross negligence, resolving the case on negligence instead. Compounding the problem were the incomplete instructions the district court gave on the good Samaritan rule, which seemingly limited its application to the CPR issues in the case. At minimum, on this record and given NRS 41.500's plain application, this case should be reversed and remanded for a new trial with proper instructions on the good Samaritan rule.

By its terms, NRS 41.500(1) (and arguably its subsections addressing non-liability for acts or omissions in connection with CPR and AEDs) applies. Stephens "receiv[ed] care or assistance" from Red Rock for which "compensation or other remuneration" was not "required or expected" to be paid, satisfying the requirement that the emergency services be provided "gratuitously." NRS 41.500(1), (10). Emergency services were "rendered," in that Franco placed his hands on Stephens's chest to check for breathing and rolled him onto his side in a "recovery position" to avoid airway obstruction. While Stephens maintains that Franco should have performed CPR or called for and used one of the AEDs on premises, the statute immunizes good Samaritans for "acts or omissions" and, going further, for injuries suffered "as a result of any act or failure to act, not amounting to gross negligence, to provide or arrange for further medical treatment for the injured person." NRS 41.500(1). Furthermore, since Red Rock's duty did not extend beyond providing basic first aid and summoning professional medical help, its lay employees did

not have a preexisting duty to administer CPR or summon and use an AED in the six-minute window they had. *See Abramson v. Ritz Carlton Hotel Co.*, 480 Fed. Appx. 158, 163 (3rd Cir. 2012) (holding that New Jersey's good Samaritan statute immunized the hotel from liability for not having a functioning AED or oxygen, since "the preexisting duty is a limited one and the alleged negligence is the failure to provide a level of assistance beyond that required by the preexisting duty" (internal quotation omitted)). Thus, by its plain terms, the jury should have been instructed that, unless they found gross negligence, the good Samaritan rule in NRS 41.500(1) applies to insulate Red Rock from liability in this case.

I am sympathetic to the Stephenses. However, neither the common law nor our statutory law supports the imposition of liability for negligence in this case. In fact, it is at odds with the Legislature's efforts to encourage businesses to voluntarily train employees in CPR and acquire AEDs. Upholding liability in this case is also at odds with the good Samaritan rule, which supports liability only in cases involving gross negligence, as to which there was no affirmative finding here.

For these reasons, I respectfully dissent.

_____, J.
Pickering

We concur:

_____, C.J.
Hardesty

_____, J.
Douglas